[No. 15903.  Department One.  August 10, 1920.]

BANKERS TRUST COMPANY, *Appellant*, v. AMERICAN
SURETY COMPANY, *Respondent*.[1]

INSURANCE (116)—INDEMNITY INSURANCE—LIABILITY FOR LOSS—
DEMAND FOR PROOFS OF LOSS—ESTOPPEL.  Under a bank clerk's in-
demnity bond conditioned that the insured should not be liable
unless the loss be disclosed during continuation of the policy or
within fifteen months after termination, the insurance company is
not estopped from denying liability from the fact that it asked for
proofs of loss twenty-one months after cancellation of the policy,
where the insured had not incurred any expense in attempting to
furnish information necessary to the making of the proofs of loss,
and had not been prejudiced in any way in reliance on the waiver,
and the parties had simply proceeded for a few days upon the mis-
taken presumption that there was an existing policy.

Appeal from a judgment of the superior court for
Pierce county, Card, J., entered September 12, 1919,
upon granting a nonsuit, dismissing an action on an
indemnity bond, tried to the court and a jury.  Affirmed.

*S. Warburton (H. G. & Dix H. Rowland*, of counsel),
for appellant.

*C. E. Dunkleberger* and *Bates & Peterson*, for re-
spondent.

MACKINTOSH, J.—The appellant was engaged in the
banking business in Tacoma.  In November, 1913, the
respondent issued to it a policy covering one of its
employees.  This policy provided for the payment to
the bank of any money which it might lose by any act
of fraud or dishonesty or theft or embezzlement of the
employee.  The policy continued in full force until it
was cancelled by agreement of both parties on Febru-
ary 23, 1916.  The policy provided that the respondent
should not be liable thereon unless "the loss be dis-
closed during the continuation of the suretyship . . .
or within fifteen months after the termination thereof

[1]Reported in 191 Pac. 845.

and notice delivered . . . within ten days after such discovery.'' On the 21st of November, 1917, which, it will be noted, was practically twenty-one months after the termination of the suretyship, the appellant telegraphed the respondent's home office in New York that there was a loss under the policy. Upon receipt of this telegram, the home office telegraphed its manager in Seattle advising him that the Tacoma bank had notified the company of the loss, and telling him the company was sending him the papers, and in the meantime ''to get in touch with the employer, furnish claim blanks, and advise us particulars.'' On the following day, November 22d, the Seattle agent wrote to the appellant as follows:

''Seattle, Wash., Nov. 22, 1917.
''Bankers Trust Company,
    ''Tacoma, Wash.

''Gentlemen:—My home office has advised me of your report there of a shortage in the accounts of E. J. McDonald. I am enclosing herewith claim blanks in duplicate, Form F-33, for your convenience in stating up any claim which you may have to make against this company by reason of our bond for Mr. McDonald.

''Under items of default you will please indicate the date of shortage, a description thereof and the amount, while under credit indicate what the bank may be owing Mr. McDonald, if anything.

''It is desired that you complete both of these blanks, sending one direct to the home office of the company and the other to me.

''Yours truly,
        ''(Signed) S. H. Melrose, Manager.''

On November 24, the appellant wrote to the home office of the respondent as follows:

''Tacoma, Washington, Nov. 24, 1917.
''American Surety Co. of New York,
    ''New York City.

''Gentlemen:—We beg to confirm the following telegram sent to you on November 21st:

" 'You have loss under C Eleven Thousand Seven Evan J. McDonald Twenty-five Hundred Dollars, short in his account Bankers Trust Company Seventeen Thousand One Hundred Sixty-six and sixty-eight cents.'

"In reply to which we received from Mr. S. A. Melrose, your general manager at Seattle, under date of November 22d, a letter acknowledging receipt of our notice of claim and enclosing the necessary blanks for the purpose of submitting same in detail.

"In this connection, you are advised that two days after the shortage and the falsification of the accounts by Mr. Evan J. McDonald, we employed the firm of Price-Waterhouse & Company, certified public accounts, and they have been at work on the books for several days. As soon as the work has been completed, which will be in the course of a week or so, we will have the claim submitted to you on forms furnished by Mr. Melrose.

"Yours very truly,
"(Signed) M. M. Ogden, Cashier."

On December 4, the respondent wrote the appellant the following letter:

"New York, Dec. 4, 1917.
"Mr. M. M. Ogden, Cashier,
   "Bankers Trust Company,
      "Tacoma, Washington.

"Dear Sir:—We are in receipt of your letter of the 27th ult. addressed to our manager at Seattle, Wash., Mr. S. B. Melrose, together with the enclosure therein mentioned. In reply we would respectfully call your attention to the fact that bond covering Mr. McDonald was in effect from September 1, 1913, to February 23, 1916, on which latter date it was cancelled, the liability having been taken up by the Maryland Casualty Company, as we understand it.

"Under the terms of the bond issued by this company you had fifteen months after the cancellation thereof in which to discover loss. Such fifteen month period would expire May 23, 1917. You, however, did not discover shortage until some time in November of this year, or

about six months after our liability had expired. Under the circumstances, you will of course perceive that there is no liability on our part, and we have accordingly filed papers without taking any action therein.

"Yours truly,
"(Signed) B. J. McGinn,
"Asst. Secretary."

The respondent refused to recognize the existence of the policy or any liability thereunder, and the appellant began this action, and has brought this appeal from a judgment against it.

It is claimed in support of appellant's right of recovery that, although the policy had been cancelled in February, 1916, and by its terms the respondent was not liable for a loss which was discovered more than fifteen months thereafter, the respondent, by its conduct, had impliedly waived that provision of the policy and is estopped from now denying liability thereunder.

Many questions are presented upon this appeal, but in view of the conclusion to which we are about to arrive, it is necessary to notice but two of them.

A great deal of confusion arises in cases of this kind from the interchangeable use of the terms waiver and estoppel as though they were synonymous. There are cases of express waiver where the insurer is bound without any additional acts by either insured or insurer, and cases of implied waiver where the insurer is bound by reason of estoppel. The appellant argues that the conduct of the respondent in calling for proofs of loss and furnishing blanks on which to make claim impliedly waived the provision in the policy that it would not be liable for loss discovered after fifteen months from the termination of the policy, and argues that the respondent, having participated in the cancellation of the policy, is to be presumed to have acted

with full knowledge of the facts; and knowing that the
policy had been terminated in February, 1916, and that
its liability thereunder ended fifteen months from that
date, must be held to have waived the benefit of the
policy's provision by its conduct as shown in the cor-
respondence; and in support of this cites a great many
authorities to the effect that an insurer of any kind
will be held to waive such provisions in the policy by
this or similar conduct.   The respondent, however,
argues that, although there may be a waiver by the
insurance company, such waiver is simply of defenses
available upon existing policies, and that the authori-
ties do not go to the extent of holding that an insurance
company, by calling for proofs of loss, recreates an
insurance policy the term of which has already expired
by cancellation or otherwise.   The argument is that
there is a difference between a waiver that is merely
the foregoing of certain rights arising from breaches
of condition or warranties, or other matters which
might give the insurance company a defense, and a
waiver which would write an entirely new policy in
the place of that which had been cancelled or had ex-
pired.   In other words, that there cannot be a waiver
in this case for the reason that the liability of the com-
pany had terminated by the cancellation of the policy
in February.

It is not necessary to thoroughly investigate this
phase of the case, and for the purpose of this opinion
it may be assumed that the appellant's argument is
sound and that a waiver might be made by the respond-
ent such as would extend the operation of the provision
of the policy which we have quoted, so that the com-
pany might become liable for losses which were dis-
covered after fifteen months·from the date of the can-
cellation of the policy.   But although insurance com-
panies may be held to have impliedly waived the pro-

vision of the policy, the real ground upon which the liability had been impressed is that, by their conduct. in waiving the provisions, they have estopped themselves from relying upon those provisions. In other words, that the basis of their liability is an estoppel and not the mere implied waiver; that, having waived the provisions, they have placed the other parties at such a disadvantage, or occasioned them such expense, that it would now be inequitable for the insurance companies to deny the waiver. We are not in this case dealing with an instance of express waiver.

As was said by the supreme court of California in *McCormick v. Orient Ins. Co.*, 86 Cal. 260, 24 Pac. 1003:

"In strictness, the term 'waiver' is used to designate the act, or the consequences of the act, of one side only, while the term 'estoppel' (*in pais*) is applicable where the conduct of one side has induced the other to take such a position that he will be injured if the first be permitted to repudiate his acts; but in the law of insurance the terms are ordinarily used indiscriminately."

"The party who pleads an estoppel must be one who in good faith has been misled to his injury." 16 Cyc. 777.

"Where the act does not result in damage or disadvantage it does not create an estoppel." *Hughes v. New York Life Ins. Co.*, 32 Wash. 1, 72 Pac. 452.

It was said in that case:

"The doctrine of estoppel is of equitable origin, and is founded upon principles of equity and justice. It is applied to conclude a party who, by his acts or admissions, has influenced the conduct of another, only when in good conscience and honest dealing he ought not to be permitted to gainsay them. When an admission is relied upon to work an estoppel, and it has been made by mistake, or without any intent to injure another, it is only in extreme cases that the law will not permit the party making the admission to show the truth. Before

that result will follow, it must appear that the admission was made under circumstances showing gross, if not culpable, negligence; and the other party must have acted thereon to his material injury. The reply of the appellant does not make a case within these principles. While she alleges she abandoned a contemplated action for a larger sum, and commenced the present one on the strength of the respondent's admission, she does not allege that her contemplated action was a valid action, nor one in which she had reasonable cause to believe that she could recover; nor does she allege that the same is not now open to her. Her only injury, therefore, has been the costs of the present action; and costs incurred in litigation are insufficient to constitute the basis of an estoppel."

In the case of *Butler v. Supreme Court of Foresters,* 53 Wash. 118, 101 Pac. 481, 26 L. R. A. (N. S.) 293, we said:

"Some definitions of estoppel are cited by the respondent, to the effect that, in the broad sense of the term, estoppel is a bar which precludes a person from denying the truth of a fact which has, in contemplation of law, become settled by the acts and proceedings of judicial or legislative officers, or by the act of the party himself, either by conventional writing or by representations, express or implied, *in pais.* And further 'because a man's own act or acceptance stoppeth or closeth up his mouth to allege or plead the truth.' But while this is true of what an estoppel is, in the abstract, the party pleading it must show that he has been injured by reason of the acts of the party which he claims to be an estoppel, by reason of having relied on the representations of the person sought to be estopped, so that his position with reference to the matter in hand has been changed to his disadvantage."

The cases relied on by the appellant to prove what it calls a waiver, but which we have indicated is properly designated as an estoppel, bear out our conclusion. In *Titus v. Glen Falls Ins. Co.,* 81 N. Y. 410, it was held that, when there was a breach of condition con-

tained in an insurance policy, it was in the option of the insurance company to take advantage of such breach or to overlook it; that is, if it saw fit, it might waive the forfeiture, and that this waiver might take place expressly or by acts from which a waiver could be inferred, or from which a waiver would he held to follow, as a matter of law; the court saying:

"But it may be asserted broadly that if, in any negotiations or transactions with the insured, after knowledge of the forfeiture, it recognizes the continued validity of the policy, or does acts based thereon, or requires the insured by virtue thereof to do some act or incur some trouble or expense, the forfeiture is as matter of law waived."

14 R. C. L. 1197 lays down the general rule that, when an insurance company has knowledge of acts which work a forfeiture, and yet enters into negotiations with the insured in the form of requests for proofs of loss, it thereby recognizes the continued validity of the policy and will be bound, if it has thus induced the insurer to "incur expense under the belief that the loss will be paid."

In *Graham v. American Fire Insurance Company,* 48 S. C. 195, 26 S. E. 323, it was held that an insurance company with knowledge of facts which might forfeit the policy, having led the insured to believe it still recognized the validity of the policy by encouraging it to incur expense, would be estopped from insisting on the forfeiture. *Mutual Protective League v. Walker,* 163 Ky. 346, 173 S. W. 802, is to the same effect, as is *Western Ins. Co. v. Ashby,* 53 Ind. App. 518, 102 N. E. 45, and *Keys v. National Council, etc.,* 174 Mo. App. 671, 161 S. W. 345.

In *Cannon v. Home Ins. Co.,* 53 Wis. 585, 11 N. W. 11, the supreme court of Wisconsin said:

". . . that, as the defendant, in its correspondence with the attorneys of the plaintiff, after full knowledge

of the forfeiture, saw fit to call for additional proofs of loss, recognizing by this act the continued validity of the policy, it could not, after the plaintiff had gone to the expense and trouble of furnishing these proofs, change its ground and claim that the policy was no longer in force.''

See, also, *Planters Mutual Ins. Co. v. Loyd,* 67 Ark. 584, 56 S. W. 44; *Pace v. American Cent. Ins. Co.,* 173 Mo. App. 485, 158 S. W. 892; *Rundell v. Anchor Fire Ins. Co.,* 128 Ia. 575, 105 N. W. 112; *Cleaver v. Traders Ins. Co.,* 71 Mich. 414, 39 N. W. 571; *Prudential Ins. Co. v. Hummer,* 36 Colo. 208, 84 Pac. 61; *Grubbs v. North Carolina Home Ins. Co.,* 108 N. C. 472, 13 S. E. 236; *Berry v. American Cent. Ins. Co.,* 132 N. Y. 49, 30 N. E. 254; *Hatcher v. Sovereign Fire etc. Co.,* 71 Wash. 79, 127 Pac. 588.

Throughout all these cases the point is emphasized that the implied waiver must have resulted in some loss to, or expenditure by, the insured which would make it inequitable for the insurer to now deny its waiver.

It therefore becomes necessary in this case to determine whether the evidence shows anything which would operate as an estoppel against the respondent; in other words, whether, admitting that the insurance company by its conduct impliedly waived the provision of the policy in question, by that act it had caused the appellant to incur expense or suffer loss.

The evidence shows that, for some time prior to November 21, 1917, the appellant was in such financial condition that some arrangement was necessary for its relief, and that another bank in Tacoma was negotiating for the purpose of taking over its business, and in pursuance of those negotiations, the books of the appellant were being examined for the purpose of determining its financial status. The evidence also shows

that, upon the cancellation of respondent's policy in February, 1916, another bonding company had taken the place of the respondent and had written a bond covering the same employee mentioned in the policy before us, and that the experts who were called in, and who are referred to in the appellant's letter, made the investigation for the purpose of determining the liability under this other policy, and that no investigation was made of the books of the company for the purpose of supplying the proof of loss under the policy of the respondent company, the testimony upon that point being as follows:—The witness was an expert representing the accountant company:

"Q. Have you examined the books of that date to ascertain what they were? A. As of February 21, 1916? Q. No, September 1, 1913? A. No. Q. Your examination began along in February, 1916? A. Yes, sir. Q. February 21st and continued on down? A. Yes, sir, periodically, yes. Q. You did not examine preceding that date? A. No."

From this it will be seen that there was no proof that, relying upon the waiver of the respondent, the appellant proceeded to furnish the information necessary to make the proof of loss by incurring any expense, and that nothing has been done which places the appellant in a more disadvantageous position than it would have occupied had there been no purported waiver, and that appellant had foregone no valuable right or changed its position to its prejudice in reliance upon the acts of the respondent. The evidence merely establishes that, under a mutual mistake, the two parties, for a few days, have proceeded upon the presumption that there was an existing policy, and that no act of the respondent led the appellant to do anything which added to its expense or inconvenience.

"Ordinarily a waiver is an intentional release of some right, and it is generally held that provisions of

this character in insurance policies are deemed to be waived only when an intention to waive is apparent, or where the conduct of the company is inconsistent with an intention to declare a forfeiture, or has placed the other party at a disadvantage, or gained for itself an advantage which it should not in justice and good conscience be permitted to assert.'' *Elhart v. Pacific Mutual Life Ins. Co.*, 47 Wash. 659, 92 Pac. 419.

''While the later decisions all hold that such waiver need not be based upon a technical estoppel, in all the cases where this question is presented, where there has been no express waiver, the fact is recognized that there exists the elements of an estoppel.'' *Armstrong v. Agricultural Ins. Co.*, 130 N. Y. 560, 29 N. E. 991.

See, also, *Brink v. Hanover Fire Ins. Co.*, 80 N. Y. 108; *Goodwin v. Massachusetts etc. Ins. Co.*, 73 N. Y. 480; *Prentice v. Knickerbocker Life Ins. Co.*, 77 N. Y. 483.

''Where the facts are equally known to both parties, there can be no estoppel.'' *Knights and Ladies of Columbia etc. v. Shoaf*, 166 Ind. 367, 77 N. E. 738.

'' 'The whole doctrine depends·on estoppel, and the essential feature of it is loss or injury to the other party by the act of the party to be estopped. In this respect there is nothing peculiar about actions upon insurance policies. They stand upon the same footing as other litigation.' Waiver is essentially a matter of intention, and to establish it there must be some declaration or act from which the insured might reasonably infer that the insurer did not mean to insist upon a right which, because of a change of position induced thereby, it would be inequitable to enforce.'' *Freedman v. Providence Washington Ins. Co.*, 175 Pa. 350, 34 Atl. 730.

''It is admitted that 'both parties acted in good faith up to the commencement of the suit.' It is to be observed that there is no question of any conduct of the defendant which induced the plaintiffs to omit anything essential, or to do anything prejudicial, *to the validity of the policy,* either before or after the

loss. . . . An essential element of estoppel of this character is that one party should have relied upon the conduct of the other, and been induced by it to put himself in such a position that he would be injured if the other should be allowed to repudiate his action.'' *McCormick v. Orient Ins. Co., supra.*

There being no evidence upon which an estoppel can be predicated, the trial court was correct in dismissing the case, and its judgment is hereby affirmed.

Holcomb, C. J., Main, Mitchell, and Tolman, JJ., concur.