[No. 19198. Department Two. August 19, 1925.]

EDWARD HUBBARD, *Respondent,* v. HARTFORD FIRE INSURANCE COMPANY, *Appellant.*[1]

INSURANCE (107, 188)—ESTOPPEL OR WAIVER AFFECTING RIGHT TO AVOID POLICY—POWER OF ADJUSTER RESPECTING WAIVER—QUESTION FOR JURY. The authority of an insurance adjuster to represent the company and waive compliance with requirements of the policy is for the jury where he had telegraphic authority to investigate the case, he was in constant communication with the parties, and assumed, and testified that he had, full authority to represent the company.

APPEAL (389)—INSURANCE (164)—ACTIONS—FAILURE TO PLEAD WAIVER—AMENDMENTS—CONSIDERED AS MADE. In an action on an insurance policy, failure to plead waiver of the requirements of the policy, which might have been done by a trial amendment, does not make it reversible error to admit evidence of such waiver, though seasonably objected to, where neither party°was denied the right to fully try out the issue and no continuance was asked.

INSURANCE (137)—PROOF OF LOSS—WAIVER—ACTS OF ADJUSTER. Where failure to present proofs as required by the policy was due to misrepresentations of the insurance agent, it is not a matter of oral modification of the terms of the policy and the proofs are waived.

[1]Reported in 238 Pac. 569; 240 Pac. 565.

SAME (63)—ASSIGNMENT OF POLICY—VALIDITY—IMPERFECTED AS-
SIGNMENT. Plaintiff's ownership of an insurance policy on a sea-
plane is not affected by an assignment thereof on the back, which
the company refused to consent to, following which the policy was
not delivered to the assignee.

Appeal from a judgment of the superior court, for
King county, Ralston, J., entered December 3, 1924,
upon the verdict of a jury rendered in favor of the
plaintiff, in an action on an insurance policy. Affirmed.

*Roberts & Skeel* and *J. J. Geary,* for appellant.

*Donworth, Todd & Higgins* (*Hyman Zettler,* of
counsel), for respondent.

HOLCOMB, J.—This is an action upon an insurance
policy, issued by appellant to respondent on Septem-
ber 1, 1922, in the sum of $5,000, upon a seaplane, con-
ditioned, among other things, that no liability should
accrue on the policy unless the loss or damage
amounted to ninety-five per cent of the policy. On
March 29, 1923, while the policy was in force, respond-
ent had an accident which he alleged in his complaint
damaged the plane in excess of the insurance. It was
also alleged that respondent performed every condi-
tion upon his part to be performed, and appellant re-
fused to pay.

Appellant denied liability, denied that respondent
had performed all the conditions upon his part to be
performed, denied that he had made proof of loss,
denied that he had sustained the amount of damage
alleged, denied that he had furnished log books as
agreed in the policy upon loss, denied respondent's
ownership of the plane, and denied that he had per-
formed any of the conditions upon his part to be per-
formed.

There was no allegation of waiver or estoppel on the
part of appellant to deny the loss in the complaint of

respondent, nor did respondent reply to appellant's answer, and make such averments.

At the trial to the court and a jury, respondent claimed that there was a waiver by one Ensign, an insurance adjuster of Seattle, appellant vigorously contending that Ensign was not an authorized agent of appellant to do anything constituting a waiver or estoppel on the part of and binding appellant; and appellant objected to any proof of waiver of any kind because it had not been pleaded. These issues were constantly and hotly contested throughout the trial.

The trial court overruled all objections, and submitted the case to the jury, which returned a verdict for the amount of the insurance.

Motions for directed verdict at the close of plaintiff's evidence, and also at the close of all the evidence were denied; as were, also, motions for judgment n. o. v., and, in the alternative, for a new trial.

As to the authority of Ensign, the adjuster, who operated with, or under, the name of the Pacific Coast Adjustment Bureau, of Seattle, there is evidence in the record that the local agency of Briggs, Harper & Company, of Seattle, were advised, on March 31, 1923, by the general office of the company, through one Barber who is known as the underwriting agent of appellant, that the Pacific Coast Adjustment Bureau of Seattle had been instructed to act for the insurance company. On the same day, the general office, through Barber, instructed the Pacific Coast Adjustment Bureau, represented by Ensign, to see Briggs, Harper & Company as to the extent of the aircraft injury, and to secure evidence as to the amount of damage to each part listed, and advise that the assured must not abandon the aircraft to the company but must take the same precaution to avoid further damage as if it were

not insured. On April 2, 1923, Ensign wired an answer to the general office of the appellant company, aviation department, acknowledging the telegram to him, and stating that the loss would receive immediate attention. Other messages and letters are in the record between appellant's general office and Ensign referring to the Hubbard matter.

The evidence shows that Ensign then called on respondent within two or three days after the accident, and told respondent that he was an adjuster representing appellant, and had telegraphic authority. He asked respondent for a detailed report of the accident, which was given him. He again called on respondent a few days later and asked him what he was going to do with the plane. Respondent told him he was going to take it to the Boeing Airplane Company and have it repaired, and Ensign advised him that he was doing the right thing, to act as though he had no insurance. Hubbard testified that he told both Ensign and a representative of the local agents of appellant about that time that he did not know whether he would have a claim or not, that it was impossible then to determine (the loss being thought at the time, insufficient).

After respondent had taken his plane to the Boeing Airplane Company to have it repaired, it was found, upon detailed examination, that the damage to the plane had been much greater than at first thought. Respondent notified Ensign of this fact, and told him that it looked as if there would be a claim for damages under the policy. Ensign asked Hubbard to go with him to the Boeing Airplane Company to look over the airplane, which he did. The manager of the Boeing Airplane Company pointed out to them the way in which the different parts of the plane had been damaged. Ensign then stated to respondent that, as

respondent could only have a claim if the amount of the damages was ninety-five per cent of the insurance on the plane, the insurance company could do nothing about it until the cost of the repairs was known, and that they would have to let the matter rest until they got the bill for repairs. About a week later, respondent went to get the policy from Ensign, to whom he had delivered it, and asked Ensign if he should file a claim, and Ensign told him no, that it was not necessary as the company had been notified by their agents in Seattle, and the fact that they had appointed him, Ensign, to represent them made it unnecessary for respondent to file a claim.

The last mentioned evidence is denied by Ensign, testifying as a witness for respondent, but it presents a clean-cut question of fact for the jury to determine. Respondent apparently acted throughout in the utmost good faith and honesty, of which conduct, at least, the jury were entitled to judge.

When the plane had been repaired, Hubbard secured the bill of the same from the Boeing Airplane Company, which is dated June 13, 1923, showing the cost of repairs itemized as to the various parts of the plane. This was delivered to Ensign at his request. Ensign told respondent that the statement was not sufficiently detailed, and respondent then asked the Boeing Airplane Company to furnish a more detailed statement of the cost of repairs to the machine to Mr. Ensign. This was done on or about June 26, 1923, the same being sent directly to Mr. Ensign by the Boeing Airplane Company. After the segregated amounts had been furnished to Ensign, he received from appellant a communication dated September 17, 1923, instructing him in the event of any further demand in connection with the matter to state to the assured that

they could not admit of any liability under the policy contract. He was also instructed that, if suit was threatened, he (Ensign) should refer the matter to Mr. Roberts of the firm of Roberts & Skeel, lawyers of Seattle, and

". . . at the same time telegraphing us so that we may at once forward to Mr. Roberts a copy of the before-mentioned legal opinion and a copy of our claim file. We think that in the meantime you should let the matter rest and make no communication to the assured unless and until you receive a demand from them in connection with it."

There can be no question that, under these facts, there was a question of fact to go to the jury as to the authority of Ensign to represent the company in the matter of the adjustment of the insurance under the contract, and any waiver by him of compliance with the requirements of the policy would be within his apparent authority, on which theory the jury was charged.

Appellant most emphatically contends that the trial court erred in permitting the introduction of any evidence tending to show a waiver on the part of appellant or its agent over the continual objections of appellant. It is insisted that there is no authority in this state or elsewhere going to the length of holding that nonconformity of proof to pleadings is not fatal, where seasonably objected to, especially in a case at law tried to a jury.

There is no doubt that, as we said in *Matzger v. Arcade Building & Realty Co.,* 80 Wash. 401, 141 Pac. 900, L. R. A. 1915A 288,

"Had the court sustained the objection, and were the case here on an appeal by the other side, we would unhesitatingly say that no error had been committed. But a different rule obtains when the trial court treats

a defective complaint as sufficient and permits each side to fully present his evidence upon the real issues in the case. In such instances, this court is enjoined by the statute to hear such cases upon their merits, disregard all technicalities, and to consider all amendments which could have been made as made. Rem. & Bal. Code, Sec. 1752. (Rem. Comp. Stats. Sec. 1752). True, if it appears that the complaining party has been surprised or misled by the want of sufficient allegations in the pleadings, and has thereby been prevented from fully presenting his case to the jury, the error is fatal to the record, but nothing of this sort appears in the present record.''

We have followed that rule as to jury cases in *Wright v. Seattle Grocery Co.,* 105 Wash. 383, 177 Pac. 818; *Hahn v. Brickell, ante* p. 189, 237 Pac. 305. In the last case we said:

''That the complaint was defective in the respect mentioned cannot be denied. It is well settled that, where fraud is charged, the complaining party must allege and prove reliance upon the misrepresentations. The demurrer should have been sustained, as well as the objection to the introduction of evidence because the complaint was defective. It does not follow, however, that the judgment should be reversed for this reason. The defect in the complaint was such as could have been cured by a trial amendment without prejudice to the appellant. Upon the trial neither party was denied the right to introduce evidence because of the defect and the case was completely tried, apparently without prejudice on account of the defective complaint. In such a case it would appear that there could not be any good reason to reverse the judgment and send it back for a new trial where, after the complaint having been amended, in all probability exactly the same evidence would be introduced.''

We then cited and quoted from *Wright v. Seattle Grocery Co., supra.* See, also, *Sjong v. Occidental Fish Co.,* 78 Wash. 4, 138 Pac. 313; *Carlson v. Druse,* 79 Wash. 542, 140 Pac. 570.

If the evidence of respondent is to be believed, his failure to present proofs, as required by the policy, was due to the misrepresentations of the agent of appellant. Thus was presented a question of fact for the jury. Although it is argued by appellant that the terms of the policy cannot be modified other than in the manner therein specified—that is by writing—it is, as was said in *Walton v. American Central Insurance Co. of St. Louis,* 115 Wash. 103, 196 Pac. 588, "not a question of modification, but whether the company would be permitted to take advantage of a wrong committed by its agent upon the assured. The case is not different from a number of other cases which have been before this court, and the question was properly submitted to the jury."

As to the question of ownership, which was denied by appellant, it appears that the insurance policy bears an endorsement on the back of an assignment to the Boeing Airplane Company of the insured's insurance due or to become due on the policy. The undisputed evidence of respondent is that the Boeing Airplane Company had the policy long enough for respondent to try to make an assignment to insure the payment of its charges for the repairs; but appellant company refused to accept the assignment and respondent took the policy away from the Boeing Airplane Company. All the other evidence in the case, from the time the application was made by respondent for the insurance on August 12, 1922, until the trial, refers to respondent as the owner of the plane. The instrument made by him to the Boeing Airplane Company was not followed by delivery of the policy, and therefore was never effectuated.

Appellant also attacks the method of fixing the loss or damage by the repair bills made by the Boeing Airplane Company. The application for the policy,

attached to and made a part thereof, contains a provision as follows:

"19. As the cost of repairs is a material factor in calculating the premium, state (a) the terms you agree to. N. B. Terms agreeable to the company are actual cost of materials plus one and one-half times the actual wages paid for labor at current rates, exclusive of extra payment for overtime and overhead charges."

The repair bill of the Boeing Airplane Company furnished respondent and appellant shows the items of charge in exact accordance with these conditions of the application. The evidence of the manager of the Boeing Airplane Company was undisputed on the repair bill.

The instructions given by the court were in harmony with our decisions on insurance liability and those refused were not in accord therewith.

We find no reversible error available to appellant, and the judgment is affirmed.

TOLMAN, C. J., FULLERTON, and MAIN, JJ., concur.

ON REHEARING.

[*En Banc.* November 13, 1925.]

PER CURIAM.—Upon a rehearing *En Banc,* a majority of the court adhere to the results reached in the Department opinion heretofore filed herein. The judgment is therefore affirmed.