[No. 21755. Department Two. July 1, 1929.]

FRED W. HENSLIN *et al., Appellants,* v. UNITED STATES FIRE INSURANCE COMPANY, *Respondent.*[1]

*Ralph Woods,* for appellants.

*Bates & Peterson* and *R. C. Carlson,* for respondent.

MILLARD, J.—A standard form fire insurance policy for a term of three years, issued by the defendant

[1]Reported in 278 Pac. 702.

through R. E. Anderson & Company, its Tacoma agent, to plaintiffs September 9, 1925, provided that the household goods of the plaintiffs were insured against loss or damage by fire only while situated in a dwelling house at 4205 McKinley avenue, in the city of Tacoma. One of the conditions recited in the policy is to the effect that no privilege or permission affecting the insurance under the policy shall ''exist or be claimed by the insured,'' unless indorsed in writing upon or attached to the instrument evidencing the contract of insurance.

On July 10, 1926, plaintiffs removed their household goods to their new home at Spanaway, approximately six miles distant from Tacoma. Becoming indebted at that time in the sum of one hundred dollars to a firm of Tacoma realtors, the plaintiffs gave to the firm their note therefor, secured by a mortgage on the insured goods. The note was transferred to one of the firm's salesmen, George W. Carson, who, on or about July 19, 1926, delivered the insurance policy to the defendant's Tacoma agent for the purpose, he testified, ''To have my mortgage clause put on and to transfer the policy.'' He took the policy

''. . . to the office of R. E. Anderson & Company and said, 'I wish to have a mortgage rider placed on this, they have moved out on the Mountain Road near Spanaway.' ''

On September 27, 1927, fourteen months later, the insured goods were destroyed by fire. Plaintiffs then discovered that permission had not been indorsed upon the policy for removal of the goods to the new location. Proofs of loss having been made and payment refused, plaintiffs commenced an action upon the policy. At the close of plaintiffs' case, defendant's challenge to the sufficiency of the evidence was sustained, the jury discharged, and judgment entered dis-

missing the action. Plaintiffs have appealed from that judgment.

One of the grounds urged by appellants as entitling them to a recovery upon the policy is that the condition requiring indorsement upon the policy of the consent of respondent to change of location of the insured goods was waived by the respondent when, with knowledge of the removal, it attached to the policy the mortgage clause

■ We are committed to the general rule that, where a policy of fire insurance, as in this instance, provides that the goods are covered only while they remain in the place where they were when insured, no recovery can be had if they are moved elsewhere without the consent of the insurer.

"An insurance company has the right to determine for itself what property it will insure and at what place it will insure it, and to provide that the policy shall become void if the property is removed from the designated place without its consent. This policy provides, in unmistakable terms, that the property described therein is insured only while at the designated location unless otherwise provided by agreement indorsed thereon; and, clearly such a condition is of the essence of the contract and the court cannot hold that it covers the property elsewhere without making a new contract for the parties." *Johnson v. Franklin Insurance Co.*, 90 Wash. 631, 156 Pac. 567.

■ We are not inclined to disagree with the authorities holding that an insurer may be precluded by estoppel from asserting conditions of an insurance policy. Assuming there may be a waiver of the conditions against the removal of insured goods to a new location, what were the acts of respondent upon which appellants rely as raising an implied waiver or estoppel?

George W. Carson, the mortgagee of the insured personalty, testified that he handed the policy to a clerk of respondent's agent and told her, "I wish to

have a mortgage rider placed on this, they have moved out on the Mountain Road near Spanaway." He does not remember whether the rider form was prepared and attached to the policy in his presence and the policy then returned to him or whether it was transmitted to him later by mail. He further testified,

"I don't remember the conversation at all; they just took the policy . . . They said they would return the policy either by mail or person, I have forgotten which."

The policy was retained in Carson's possession until the insured goods were burned. He did not, nor did the appellants, examine or read the policy subsequent to its return to Carson by respondent's agent and prior to the loss of the goods by fire. The person to whom Carson delivered the policy had authority, as assistant secretary of respondent's agent, to prepare and attach indorsements consenting to removal of insured goods from one location to another, and she was also empowered to indorse mortgage clauses upon the insurance contracts and perform like duties for the respondent. Her signature, as assistant secretary of respondent's agent, appears upon the policy issued to the appellants and also upon the mortgage rider attached thereto at the request of the mortgagee Carson. The indorsement is typewritten upon a standard form, and discloses that the rider is dated July 19, 1926, and attached to Policy No. C-2419781 of the respondent issued to appellants.

Further information appears upon the face of the indorsement form as to the dates of the commencement and expiration of the policy, the amount of insurance and the old premium rate. The spaces for new rate, extra premium and return premium were not overlooked, as the clerk who prepared the indorsement drew a typewritten line through the spaces, indicating

that the rate was the same and that no extra or return premium was payable. The typewritten recital protecting Carson's interest as mortgagee is as follows:

"Loss, if any, subject however to all the terms and conditions of this policy, is hereby made payable to George W. Carson."

Nothing appears upon the face of the policy or of the mortgage rider indicating that the location of the insured property had been changed. The only evidence before us that the respondent was ever advised of the removal of the insured goods, or that request was made to indorse on the policy the change of location of the household effects, is the casual remark of Carson "they have moved out on the Mountain Road near Spanaway."

When Carson gave his name to respondent's agent and requested that a mortgage rider be attached to the policy, he should have definitely requested the indorsement of change of location of the insured property. It is manifest that, though he made the statement that appellants had moved, the clerk did not hear him. The only reasonable assumption is that, had the assistant secretary (undoubtedly an employee of considerable insurance experience) been informed of the change of location, she would have done one of two things—indorsed, or refused to indorse, upon the policy consent to removal of the goods. If the former, she would have required payment of the additional premium on the insurance. The rate of insurance on appellants' household effects would have been seventy-five cents a hundred in Spanaway as compared to thirty-five cents in Tacoma.

The negligence of appellants in removing the goods to Spanaway prior to obtaining respondent's consent to the removal, and Carson's negligence in not clearly requesting respondent to indorse a removal clause upon

the policy, may not be imputed to respondent. It is manifest that the assistant secretary of respondent's agent prepared for Carson all that he requested, or at least all that she understood he requested. There is neither evidence, nor reasonable inference from evidence, that the respondent ever knew that appellants had removed the insured goods from Tacoma. The policy as written does not cover property at its new location; and the respondent is not concluded by any acts or admissions from asserting that the policy does not cover the property at Spanaway. To hold otherwise would be to write a new contract for the parties.

■■ Appellants next contend that the respondent, with knowledge that the goods were destroyed in a place other than the one in which they were situated when originally insured, by requiring additional proofs of loss, is estopped to invoke the condition voiding the policy if the insured goods are moved without its consent.

The property was destroyed by fire September 27, 1927. The respondent was immediately notified of the loss and its adjuster in his investigation visited the scene of the fire. Proofs of loss submitted by appellants November 23, 1927, apprised respondent for the first time that the insured property had been removed from Tacoma to Spanaway. On or about January 1, 1928, appellants, in compliance with the request dated December 8, 1927, of the respondent's adjuster, made additional proofs of loss. The adjuster's letter reads as follows:

"In your detail report of the furnishings destroyed, which you have furnished me, the detail list is apparently at cost price per article. This doesn't fully comply with your policy requirements. You failed to give us the amount that you claim under each item, being its value at the time of the loss. In this same connection will you furnish us with the date of the purchase

of each article as far as possible and where it was purchased?''

Payment of the insurance not having been made, the appellants commenced this action, alleging that the agent of respondent on July 19, 1926, orally promised that the policy of insurance would cover appellants' household goods at the new location. By answer, respondent denied the allegation, and as an affirmative defense, pleaded the condition voiding the policy if the goods were removed without its written consent.

Respondent was entitled to plead any defense it may have had to this action, and such plea must be given effect, unless by its acts, or those of its duly authorized agents, it waived such defense before appellants brought the suit.

We can not agree with the contention of the appellants that the request of the adjuster for completion of the proofs of loss misled the appellants or caused them to change their position or in anywise injured them. The action of the adjuster in requiring completion of the proofs by having appellants state the value of each item destroyed, date of purchase and where purchased does not operate to estop respondent from defending this action on the ground that the contract had been voided by appellants' breach of the removal condition. The adjuster's duty and the extent of his authority were to investigate the fire, ascertain the loss sustained by appellants and to report his findings to the respondent. Section 7033, Rem. Comp. Stat., defines an adjuster and his duties as follows:

'' 'Adjuster' or 'Insurance Adjuster' is a person, copartnership or corporation who undertakes to ascertain and report the actual loss or damage to the subject matter of the insurance due to the hazard or peril insured against.''

There is no evidence that the adjuster had authority to waive any of respondent's rights or to admit or to

deny its liability. As we said in *Manheim v. Standard Fire Ins. Co.,* 84 Wash. 16, 145 Pac. 992;

"The statute having defined the duties of an adjuster, no presumption that he had authority to perform other duties and thereby bind the respondent can arise from the mere fact that he was acting as an adjuster."

The implied waiver or estoppel on which appellants rely did not result in any loss to them. The general rule laid down in 14 R. C. L., 1197, that

". . . when an insurance company has knowledge of acts which work a forfeiture, and yet enters into negotiations with the insured in the form of requests for proofs of loss, it thereby recognizes the continued validity of the policy and will be bound, if it has thus induced the insurer to 'incur expense under the belief that the loss will be paid,' "

is discussed in *Bankers Trust Co. v. American Surety Co.,* 112 Wash. 172, 191 Pac. 845, and the cases bearing thereon are reviewed. Judge Mackintosh, speaking for the court, said:

"Throughout all these cases the point is emphasized that the implied waiver must have resulted in some loss to, or expenditure by, the insured which would make it inequitable for the insurer to now deny its waiver. It therefore becomes necessary . . . to determine whether . . . admitting that the insurance company by its conduct impliedly waived the provision of the policy . . . by that act it had caused the appellant to incur expense or suffer loss."

In that case, as in the case at bar, nothing was done which placed the appellants in a more disadvantageous position than they would have occupied had there been no purported waiver and appellants have not foregone any valuable right or changed their position to their prejudice in reliance upon the acts of the respondent.

"Ordinarily a waiver is an intentional release of some right, and it is generally held that provisions of

this character in insurance policies are deemed to be waived only when an intention to waive is apparent or where the conduct of the company is inconsistent with an intention to declare a forfeiture, or has placed the other party at a disadvantage, or gained for itself an advantage which it should not in justice and good conscience be permitted to assert." *Elhart v. Pacific Mutual Life Ins. Co.,* 47 Wash. 659, 92 Pac. 419.

The other assignments of error have been considered. They do not warrant reversal of this cause. The judgment should be, and it is, affirmed.

MAIN, FRENCH, and PARKER, JJ., concur.

TOLMAN, J. (dissenting)—The matters mentioned, together with other things shown to have occurred which are not mentioned, in my judgment, were sufficient to take the issue of waiver to the jury. I therefore dissent.