[No. 32668. Department Two. April 5, 1954.]

UNITED TRUCK LINES, INC., *Respondent*, v. EMPLOYERS MUTUAL CASUALTY COMPANY, *Appellant*.[1]

*Lawrence H. Brown,* for appellant.

*Cashatt & Williams,* for respondent.

WEAVER, J.—Defendant, Employers Mutual Casualty Company, appeals from a judgment of five thousand dollars against it arising out of an alleged *oral* contract. The contract was purportedly made on behalf of the company, by an insurance adjuster, with plaintiff's legal counsel.

Albert E. Perley was insured by a standard automobile liability policy issued by defendant through the Motor Club Agency, Inc., for members of the Inland Automobile Association in Spokane. The policy provided five thousand dollars property damage liability.

[1]Reported in 268 P. (2d) 1014.

· November 10, 1951, the insured car, driven by Mr. Perley, collided with plaintiff's truck and trailer. Mr. Perley was killed. Plaintiff's truck and trailer were damaged to the extent of $6,979.34. Cargo of the value of $601.22 was destroyed. Although liability for the accident is not an issue in this case, counsel stipulated that it was the opinion of all parties involved that Mr. Perley was responsible for the accident, and the parties acted upon that supposition.

Plaintiff referred its claim for damages to attorney Francis P. Cael.

Mr. Cael testified: That he, in good faith, believed that plaintiff's claim for damages survived Mr. Perley's death, and that his estate, and defendant as insurer, were liable; that he opened negotiations with an independent insurance adjusting company, represented in Spokane by Mr. Henry A. Moriarty, which adjusted claims for defendant; that when the truck and trailer were repaired, he took the bills to Mr. Moriarty, who informed him that defendant insurance company would pay the property damage limit if a proper release could be had; that he (Mr. Cael) was undecided whether to settle for five thousand dollars or to wait until he learned if the Perley estate was sufficient to proceed against it for the balance of plaintiff's claim; that he informed Mr. Moriarty of this; that Mr. Moriarty referred him to local counsel for the insurance company who informed him

". . . that he wouldn't accept—deem it advisable to accept any type of a conditional release, because if that was given and the United Truck Lines proceeded against the Perley Estate under their contract of insurance, they would have to give the defendant or the administratrix a defense to the lawsuit."

Mr. Cael telephoned Mr. Moriarty and informed him that the lawyer for the insurance company wanted a complete release; that as soon as he could check the inventory and appraisement of the Perley estate, which was not then filed, it would be decided if the offer of settlement should be accepted; that the estate appraisement was not sufficiently large to justify proceeding against the estate; that plaintiff

authorized him to accept the offer of settlement; that he telephoned Mr. Moriarty, told him the estate was insufficient, and that he was accepting the offer of settlement and was prepared to give a complete release to all of the parties; that Mr. Moriarty said in substance "that it was all right" and to take the matter up with counsel for the insurance company, to prepare the releases; that, thereafter, payment was refused.

This action was tried upon the theory of an offer and acceptance. It is not an action upon the insurance policy.

The trial court entered findings of fact, substantially in accord with Mr. Cael's testimony, and found that Mr. Moriarty was authorized by defendant to negotiate a settlement of plaintiff's·claim. In so doing, the court found that the insurance adjuster was acting within the scope of his agency for defendant.

Appellant's assignments of error will be discussed under three headings: (1) Did Mr. Moriarty have authority to enter into the contract and bind appellant? (2) Was there consideration for the contract? (3) Was the contract made?

RCW 48.17.050, Rem. Supp. 1947, § 45.17.05 and Rem. Supp. 1947, § 45.17.41 [cf. RCW 48.17.410], upon which appellant relies, were both adopted in 1947 (Laws of 1947, chapter 79, §§ 17.05 and 17.41, pp. 333, 348) and have not been before this court for construction. The former section defines the term "adjuster." The latter provides:

"Powers Conferred by Adjuster's License: An adjuster shall have authority under his license only to investigate or report to his principal upon claims as limited under section 45.17.05 on behalf only of the insurers if licensed as an independent adjuster, or on behalf only of insureds if licensed as a public adjuster. An adjuster licensed concurrently as both an independent and a public adjuster shall not represent both the insurer and the insured in the same transaction." Rem. Supp. 1947, § 45.17.41.

Mr. Moriarty was licensed as an independent insurance adjuster by the state insurance commissioner.

The quoted statute is primarily a part of the licensing statutes. We find nothing in it which prohibits or makes

it unlawful for a licensed insurance adjuster to exercise additional authority upon behalf of his principal if such additional authority is within the authorized scope of his authority. However, in view of the statutes, no presumption of additional authority arises from the actions of an adjuster acting under his license. It must be proved.

Our interpretation is strengthened by reference to *Manheim v. Standard Fire Ins. Co.,* 84 Wash. 16, 145 Pac. 992 (1915) and *Henslin v. United States Fire Ins. Co.,* 152 Wash. 637, 278 Pac. 702 (1929). Both cases were actions by the insured against the insurer. Both plaintiffs claimed that the adjuster had waived, for the insurer, certain conditions of the policy. Our former statute also defined an "insurance adjuster." 3 Rem. & Bal. Code, § 6059-2; Rem. Comp. Stat., § 7033. In both cases, this court said:

"The statute having defined the duties of an adjuster, no presumption that he had authority to perform other duties and thereby bind the respondent can arise from the mere fact that he was acting as an adjuster."

In the *Manheim* case, *supra,* no evidence was presented to show that any additional authority was conferred on the adjuster, by the insurer, which would empower him to waive any of the rights of the insurer or to admit or deny its liability. In the *Henslin* case, *supra,* there was no evidence to show the adjuster had authority to waive the insurer's rights.

Without indulging in any presumptions which might arise from Mr. Moriarty's actions as an adjuster investigating the occurrence for appellant, the evidence discloses the following:

Mr. Moriarty's work was "mainly in connection with the business that is written by the three A's, the agent here for A. A. A." After a certain date, Mr. Moriarty reported directly to appellant's home office in Des Moines, Iowa, not to his employer in Seattle. Counsel stipulated that R. B. Wellman, of Des Moines, in charge of agencies and claims west of the Mississippi river for appellant, would testify, if present, that

"So far as I know, there was *no written or oral limitation of authority* given to Mr. Moriarty as to settlement of claims or issuance of drafts and *he was not given any special authority* with respect to United Truck Lines' claim against the Perley Estate, and he made no request to me for authority to pay $5000 or any other sum on such claim, except to the extent such correspondence as passed between us might or might not show to the contrary." (Italics ours.)

Mr. Moriarty had been given a company draft book. He testified that he knew of no limitation on his authority in settling claims or issuing drafts. He wrote Mr. Wellman on an "inter-office memo":

"It is obvious, however, that this PD [property damage] claim will be considerably in excess of the PD limits under Mr. Perley's policy and as I see it now, it will wind up by our paying the full $5,000.00 PD limit. I have not yet figured out just exactly on what kind of a release *I am going to do this. . . .*" (Italics ours.)

Without first consulting the company, Mr. Moriarty, on his own responsibility, referred the matter to appellant's local counsel.

 Under these circumstances, there is sufficient evidence of Mr. Moriarty's authority to settle the claim, to make it a question for the trier of the facts. See *Hubbard v. Hartford Fire Ins.* Co., 135 Wash. 558, 563, 238 Pac. 569 (1925), 240 Pac. 565.

We cannot say that the evidence preponderates against the finding of the trial court that Mr. Moriarty was authorized by appellant to negotiate a settlement of respondent's claim and to settle and pay the same.

Appellant argues that there is no consideration for the alleged oral contract because it provided for the maximum payment of legal obligation under the policy. This argument overlooks two factors. As pointed out by the trial court:

"In the first place, defendant's [appellant's] liability was not yet fixed under its policy, and, secondly, even though $5,000 is the maximum amount of defendant's liability, in addition the policy provides for the defense of an action against the insured."

A settlement is supported by sufficient consideration when there is a bona fide claim which is unliquidated, disputed, or doubtful, the real consideration to each party being, not the sacrifice of the right, but the settlement of the dispute. *Cokelet v. Philpott,* 40 Wn. (2d) 642, 644, 245 P. (2d) 469 (1952); *Opitz v. Hayden,* 17 Wn. (2d) 347, 369, 135 P. (2d) 819 (1943), and cases cited.

The evidence does not preponderate against the finding of the trial court that the offer was made and accepted. Therefore the contract became binding between the parties.

The judgment is affirmed.

GRADY, C. J., SCHWELLENBACH, HILL, and DONWORTH, JJ., concur.