[No. 39674. Department Two. May 29, 1969.]

L. L. BUCHANAN, *Appellant,* v. SWITZERLAND GENERAL INSURANCE COMPANY, LIMITED, *Respondent.**

*Reported in 455 P.2d 344.

*Kenneth C. Hawkins,* for appellant.

*Lane, Powell, Moss & Miller* and *Hartley Paul,* for respondent.

HAMILTON, J.—Appellant (plaintiff) initiated this action against respondent (defendant) seeking to recover upon fire insurance coverage issued by respondent with respect to a building owned by appellant which had partially burned. Trial was commenced before a jury and, at the conclusion of appellant's case in chief, the trial court dismissed the action upon respondent's motion challenging the sufficiency of the evidence.

During the course of appellant's case, it was admitted that appellant failed to timely submit a sworn proof-of-loss statement as required by the provisions of the applicable insurance coverage. The predominant question framed and posed upon appeal is, therefore, whether appellant's evidence was sufficient in quality and quantum to give rise to a jury question as to whether respondent, by virtue of statements and/or acts of its adjuster, waived or was estopped to assert the pertinent provisions requiring submission of a proof-of-loss statement.

We summarize the significant circumstances revealed by the evidence, bearing in mind that appellant, upon respondent's challenge to the sufficiency of his evidence, is entitled to have his evidence, and all reasonable inferences therefrom, interpreted in a light most favorable to him. *Wetherbee v. Gary,* 62 Wn.2d 123, 381 P.2d 237 (1963).

Appellant, a resident of Yakima County, Washington, is the owner of a 2-story building and the property upon which it is situated in Seattle, King County, Washington. The bulk of the floor space in the building is leased by Draper Engine Works Co., a machine shop operation, with appellant reserving a limited portion of the ground floor as a terminal office for a freight line company owned and operated by him.

In May, 1962, appellant insured the building against fire with respondent.[1] On February 3 or 4, 1964, a fire occurred in the building, resulting in substantial reconstruction costs to appellant. At the time of the fire appellant was in Canada and did not learn of the incident until his return to his home in Yakima 4 or 5 days later.

In the meantime, respondent, through its general agent in Seattle, was notified of the occurrence and engaged the services of an independent adjuster,[2] who promptly visited the damaged premises. Because the work of the Draper Engine Works Co. was hampered by the fact that the front windows of the building had been broken and some of the electrical wiring impaired during the fire, a representative of the Draper Company and respondent's adjuster agreed that the windows should be replaced and the electrical wiring repaired immediately. This was then ordered at an expense of several hundred dollars to appellant, and the work substantially completed by the time appellant reached Seattle after his return from Canada and first met the adjuster. The representative of the Draper Company testified he would not have ordered this work done had not respondent's adjuster authorized it.

Although appellant stated he would rather have foregone repairing the building in order to convert his property into a parking facility, he further stated that because of the partial restoration work undertaken in his absence he felt impelled to continue with reconstruction.

On appellant's second visit to the premises, he was met

---

[1]Respondent is an alien insurer authorized to do business in the state of Washington. Its home offices are in Switzerland, and it maintains a head office in New York, New York, a general agent in Seattle and such local agents as it authorizes, including one in Yakima, Washington, at the time of the issuance of the coverage here involved.

[2]An independent adjuster is defined by RCW 48.17.050 as follows:

" 'Adjuster' means any person who, for compensation as an independent contractor or as an employee of an independent contractor, or for fee or commission, investigates or reports to his principal relative to claims arising under insurance contracts, on behalf solely of either the insurer or the insured. . . .

"(2) 'Independent adjuster' means such an adjuster representing the interests of the insurer."

by and consulted with his tenant, respondent's adjuster, and a building contractor. At this time, the building contractor gave him a rough estimate of the cost of basic restoration, the adjuster indicated that he felt the insurance coverage would protect appellant, and the building contractor was then directed to proceed. This added reconstruction was ultimately accomplished for $26,409.32, plus some extra miscellaneous expense, all of which appellant paid. When asked about the necessity of proofs of loss, the adjuster, according to appellant, told him he, the adjuster, or a firm he would engage for that purpose, would take care of that aspect of the matter.

Following this second meeting, respondent's adjuster employed the services of an appraiser. Based upon the appraiser's figures and upon the repair estimates, the adjuster, on March 5, 1964, wrote to appellant as follows:

> We now have an appraisal on your property which was compiled by Hugh A. Thompson, who is a senior member of the American Society of Appraisers. Mr. Thompson was with the General Appraisal Co. of Seattle as a senior professional fee appraiser. He has been with them for 10 years and we are quite sure you will find him qualified.
>
> We also have a very detailed estimate of repairs from C. M. Melburn Co. There are a few areas which we believe require some further discussion between the writer and yourself.
>
> If you will kindly let me know when you anticipate being in Seattle, I will arrange my time accordingly and we can then sit down and go over your claim and try to reach a proper conclusion.

Thereafter, on March 12, 1964, appellant met with the adjuster in Seattle. On March 17, 1964, the adjuster informed respondent's general agent in Seattle by letter of the results of that meeting, as follows:

> We wish to bring you up to date with regard to the above fire loss.
>
> We discussed this matter with Mr. Buchanan, at his Seattle office, on March 12, 1964.
>
> As you know we have an appraisal on the insured building which indicates that there was an insurable value, based upon replacement of $161,268.00. The Sound

Value was estimated at $61,262.00. Mr. Buchanan was given an opportunity to review the appraisal. The Assured disagrees with us as to the replacement cost.

Mr. Buchanan requested that we give him the formula which we proposed using in settlement of his claim. This formula would be approximately 25 over 161 x 60,000.

The Assured stated that he had discussed this matter with his attorney and was advised that he had nothing to worry about. We offered to communicate with his attorney and furnish him with copies of the appraisal, forms, etc., but Mr. Buchanan did not wish to incur this additional expense.

The Assured now advises that he will ask for an appraisal as provided by the policy contract.

We will keep you advised of further developments.

On this same date, the adjuster testified he dictated and had mailed to appellant a letter enclosing a copy or copies of the appraisal and three blank proof-of-loss forms. Appellant denies receiving any blank forms, steadfastly maintaining that the adjuster assured him throughout that it was unnecessary for him to furnish such proofs since the adjuster, or a firm engaged by him, had or would fill out and submit the necessary proofs of loss. It does not appear that any further correspondence or communication occurred between appellant and the adjuster, although restoration work and quotations therefor continued for several months, and beyond the 60-day period specified by the policy provisions for submission of proof of loss. In the meantime, on April 29, 1964, some 24 days after the 60-day period, the adjuster wrote respondent's general agent that he was awaiting appellant's appraisal.

At the conclusion of the reconstruction work, appellant initiated this action, he then being dissatisfied with the $8,000 to $9,000 figure which he felt had been offered by the adjuster in settlement of his claim through the formula stated on March 12, 1964.

In support of his contention that the evidence gave rise to a jury question upon the issue of whether respondent, through the acts and/or statements of its adjuster, waived, or was estopped from asserting the pertinent policy provi-

sions requiring a sworn proof of loss, appellant points to the evidence indicating that (a) the adjuster, without appellant's knowledge or acquiescence, authorized the initial window and electrical repairs; (b) the adjuster was present and, by his assurances to appellant that he was protected, tacitly if not directly approved appellant's direction that the contractor proceed with restoration work; (c) the adjuster advised appellant that it would be unnecessary for him to fill out any proof-of-loss statement; and (d) the adjuster was authorized by respondent to engage the services of an appraiser, submit proofs of loss on behalf of insureds, negotiate with insureds, and to compromise and settle claims.

Respondent, on the other hand, predicates its argument in support of the trial court's order of dismissal principally upon two premises. Respondent contends, first, that under our statutory and case law an independent adjuster is, absent proof to the contrary, without authority to effect a waiver by or an estoppel of his principal, the insurer; and, second, that appellant's evidence emanates solely from extrajudicial statements and/or acts of the adjuster; hence is incompetent under the rule that the scope of an agent's authority cannot be established by declarations or acts of the agent in the absence of the principal. Thus, respondent argues, appellant's evidence fails to show that the adjuster possessed any authority whatsoever to waive policy provisions relating to proofs of loss or to otherwise estop respondent from now asserting such provisions.

The trial court, in dismissing appellant's cause, adopted respondent's view. We are inclined to disagree.

The pertinent provisions of the insurance coverage here involved are standard in form, and read:

> The insured shall give immediate written notice to this Company of any loss, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, furnish a complete inventory of the destroyed, damaged and undamaged property, showing in detail quantities, costs, actual cash value and amount of loss claimed; *and within*

*sixty days after the loss, unless such time is extended in writing by this Company, the insured shall render to this Company a proof of loss,* signed and sworn to by the insured, . . .

. . .

No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months next after inception of the loss.

We have consistently, and in keeping with the prevailing rule, held that, where a proof of loss is required by a policy of insurance, such proof must be furnished by the insured as a condition precedent to an action upon the policy, unless a failure to furnish the proof of loss is due to or the result of the insured's being misled by the officers or agents of the insurer. *Davis v. Pioneer Mut. Ins. Ass'n,* 44 Wash. 532, 87 P. 829 (1906); *Davis v. Northwestern Mut. Fire Ass'n,* 48 Wash. 50, 92 P. 881 (1907); *Seattle Merchants Ass'n v. Germania Fire Ins. Co.,* 64 Wash. 115, 116 P. 585 (1911); *Kuck v. Citizens' Ins. Co.,* 90 Wash. 35, 155 P. 406 (1916); *Walton v. American Central Ins. Co.,* 115 Wash. 103, 196 P. 588 (1921); *Ritzville Warehouse Co. v. Dorgan,* 128 Wash. 25, 221 P. 986 (1924); *Merriman v. Maryland Cas. Co.,* 147 Wash. 579, 266 P. 682, 63 A.L.R. 1040 (1928); *Draper v. Aetna Life Ins. Co.,* 1 Wn.2d 17, 95 P.2d 28 (1939); *Towey v. New York Life Ins. Co.,* 27 Wn.2d 829, 180 P.2d 815 (1947); 13 Couch on Insurance 2d § 49:19 (1965).

In applying this rule, however, in varying factual situations we have not clearly drawn the line of distinction between the doctrines of waiver and estoppel as they relate to the actions and declarations of an independent insurance adjuster. Therefore, in the course of our decisions we have developed what, at first blush, would appear to be some case to case inconsistencies. For example, in *Staats v. Pioneer Ins. Ass'n,* 55 Wash. 51, 104 P. 185 (1909); *Burbank v. Pioneer Mut. Ins. Ass'n,* 60 Wash. 253, 110 P. 1005 (1910), and *Hubbard v. Hartford Fire Ins. Co.,* 135 Wash.

558, 238 P. 569, 240 P. 565 (1925), we spoke in terms of an adjuster being clothed with *apparent* authority to effect a waiver of policy provisions on behalf of the insurer; whereas, in *Manheim v. Standard Fire Ins. Co.*, 84 Wash. 16, 145 P. 992 (1915); *Henslin v. United States Fire Ins. Co.*, 152 Wash. 637, 278 P. 702 (1929), and *United Truck Lines v. Employers Mut. Cas. Co.*, 44 Wn.2d 520, 268 P.2d 1014 (1954), we said that, by reason of our statute (presently RCW 48.17.410)[3] concerning the powers of an adjuster, we would indulge in no presumptions of authority on the part of an adjuster permitting him to waive policy provisions on behalf of the insurer absent proof of such added authority.

The seeming discord in these two lines of decisions is attributable, in part at least, to the indiscriminate or interchangeable use of the terms "waiver" and "estoppel," and the discordancy tends to diminish substantially when the respective doctrines of waiver and estoppel, and their application in this field of insurance law, are examined and defined.

---

[3]RCW 48.17.410, not unlike its predecessors, provides:

"An adjuster shall have authority under his license only to investigate or report to his principal upon claims as limited under RCW 48.17.050 on behalf only of the insurers if licensed as an independent adjuster, or on behalf only of insureds if licensed as a public adjuster. An adjuster licensed concurrently as both an independent and a public adjuster shall not represent both the insurer and the insured in the same transaction."

Incidental to and perhaps related to our application of RCW 48.17.410, is RCW 48.18.470, which provides:

"None of the following acts by or on behalf of an insurer shall be deemed to constitute a waiver of any provision of a policy or of any defense of the insurer thereunder:

"(a) Acknowledgment of the receipt of notice of loss or of claim under the policy.

"(b) Furnishing forms for reporting a loss or claim, for giving information relative thereto, or for making proof of loss, or receiving or acknowledging receipt of any such forms or proofs completed or uncompleted.

"(c) Investigating any loss or claim under any policy or engaging in negotiations looking toward a possible settlement of any such loss or claim."

■ Waiver, either express or implied, has been defined as the voluntary and intentional relinquishment or abandonment of a known right. It is unilateral in that it arises out of either action or nonaction on the part of the insurer or its duly authorized agents and rests upon circumstances indicating or inferring that the relinquishment of the right was voluntarily intended by the insurer with full knowledge of all of the facts pertaining thereto. *Hopkins v. Northwestern Nat. Life Ins. Co.*, 41 Wash. 592, 83 P. 1019 (1906); *Reynolds v. Travelers Ins. Co.*, 176 Wash. 36, 28 P.2d 310 (1934); J. Appleman Insurance Law and Practice §§ 9081, 9084 (1968); 18 Couch on Insurance 2d § 71:13.

■ Estoppel, on the other hand, refers to a preclusion from asserting a right by an insurer where it would be inequitable to permit the assertion. It arises by operation of law, and rests upon acts, statements or conduct on the part of the insurer or its agents which lead or induce the insured, in justifiable reliance thereupon, to act or forbear to act to his prejudice. Abatement of the right or privilege involved by way of estoppel need not be intentionally, voluntarily or purposely effected by or on the part of the insurer. *Reynolds v. Travelers Ins. Co., supra*; J. Appleman Insurance Law and Practice §§ 9081, 9088 (1968); 18 Couch on Insurance 2d § 71:16 (1968).

■ Against the backdrop of these definitions, then, the two seemingly discordant lines of decisions above referred to come into proper focus and stand consistently together. Thus, for an independent adjuster, within our statutory framework, to effect a waiver of a policy provision, *i.e.*, a voluntary and intentional relinquishment of the provision, on the part of his principal, the insurer, it is necessary to establish that he was vested with the requisite degree of authority to effect the waiver. But, for an independent adjuster to erect an estoppel against his principal by acts, conduct or statements which inequitably induce the assured to act or forbear to act to his detriment, it is sufficient and proper to say that such falls within the scope of the adjuster's *apparent* authority. Certainly, it would be somewhat anomalous to hold that under such circumstances

the assured would be required, as a condition precedent to showing estoppel, to establish that the adjuster was vested by his principal with *actual* authority to consciously or inadvertently mislead the assured.

We hold, therefore, that an assured asserting a claim under his policy, and relying upon an alleged estoppel, based upon statements or conduct on the part of an independent adjuster engaged by the insurer to adjust the claim, to overcome a failure or omission to timely file required proofs of loss is not compelled, as an essential element of his action, to establish that the adjuster was possessed of actual authority, as distinguished from apparent or ostensible authority, to prejudicially induce the assured to forego submitting the required proofs of loss.

Turning back to the instant case, respondent does not contend that the adjuster involved was not engaged by it to investigate and adjust the alleged fire loss, nor that he was without authority to accept proofs of loss on its behalf. Neither does respondent contend that the claimed loss does not fall within the pertinent coverage. Such being so, we are satisfied that the acts, statements and conduct attributed by appellant to the adjuster, if found to be true and if it be further found that appellant was entitled to and did rely upon them to his detriment, are sufficient in quality and quantum to give rise to an estoppel precluding respondent from asserting nonliability upon the basis of appellant's failure to timely submit the required proofs of loss. *Cf. Robbins v. Milwaukee Mechanics Ins. Co.,* 102 Wash. 539, 173 P. 634 (1918); *Walton v. American Central Ins. Co., supra; Bowden v. General Ins. Co. of America,* 152 Wash. 199, 277 P. 443 (1929); *Laucks v. Hartford Fire Ins. Co.,* 152 Wash. 241, 277 P. 834 (1929).

We conclude that the trial court erred in dismissing appellant's cause.

Prior to and during the course of trial, appellant contended, and respondent denied, that respondent had issued two policies of insurance covering appellant's building. The trial court, in the course of its ruling upon respondent's

motion to dismiss, incidentally ruled that only one policy was issued. Both parties in their briefs on appeal invite and urge us to pass upon this question. We decline the invitation and express no opinion of law or fact upon the issue at this stage of the proceedings. If, upon retrial, the question again arises the trial court may make such ruling as then appears appropriate, subject to such review as may follow.

In view of our disposition of the primary issue, we do not reach the remaining contentions advanced by respondent in support of the trial court's action, except to say that we find no merit in the assertion that under the evidence appellant failed to establish any loss.

The order of dismissal is reversed, and the cause is remanded for trial. Appellant is entitled to costs on this appeal.

HUNTER, C. J., FINLEY, J., and OTT, J. Pro Tem., concur.

NEILL, J., concurs in the result.