[No. 5991. Decided October 27, 1906.]

LULU L. SHERIDAN, *by* Tillie Hewitt, *her Guardian,*
*Respondent,* v. MODERN WOODMEN OF AMERICA,
*Appellant.*[1]

BENEFICIAL ASSOCIATIONS—NONPAYMENT OF DUES—EXCUSES—UN-
AUTHORIZED WAIVER OF BY-LAWS. Nonpayment of dues by the benefi-
ciaries in a fraternal benefit certificate, after insanity of the member
insured, is not excused by the failure of the clerk of the local lodge
to give notice of assessment, after agreeing so to do, where the by-
laws provide that such nonpayment, *ipso facto,* works a suspension
of the member and forfeiture of the certificate, and that the clerk
shall have no power to waive or change any of the provisions of the
by-laws; there having been no custom on the part of the clerk to
make such waiver.

SAME—INSANITY AS EXCUSE. In such a case the insanity of the
member is no excuse for failure to pay assessments when due.

SAME—REFUSAL TO REINSTATE—ACQUIESCENCE AND LACHES OF
BENEFICIARY OF INSANE MEMBER. The beneficiary in a mutual bene-
fit certificate of an insane member is precluded from recovery by her
own laches and acquiescence in refusal to reinstate the member,
where her tender of dues was refused and returned because not ac-
companied by a certificate of good health, and the money was re-
tained and no further assessments or dues paid or tendered or any
steps taken to secure a reinstatement for a period of more than two
years, and until after the death of the insured.

Appeal from a judgment of the superior court for Sno-
homish county, Black, J., entered September 16, 1905, upon
the verdict of a jury rendered in favor of the plaintiff, in an
action upon a mutual benefit certificate. Reversed.

*Emery, Rourke & Denney* (*Ben. D. Smith,* of counsel), for
appellant.

*Bostwick & Mulvihill,* for respondent.

CROW, J.—Action by the plaintiff, Lulu L. Sheridan, by
Tillie Hewitt, her guardian, upon a benefit certificate issued
by the defendant to one Hiram D. Sheridan, now deceased.

[1]Reported in 87 Pac. 127.

The certificate, which was issued April 19, 1900, named as beneficiary the plaintiff, Lulu L. Sheridan, minor daughter of Hiram D. Sheridan and Tillie Hewitt. At the date of the certificate Lulu's father and mother had been divorced, and her mother had subsequently married. The plaintiff contends that, during the month of December, 1901, while Hiram D. Sheridan was in good standing, he became insane; that in March, 1902, he was committed to an asylum where he remained until his death in June, 1904; that in December, 1901, on discovering such insanity, Tillie Hewitt, the plaintiff's mother, gave notice thereof by letter to the clerk of the defendant's local camp at Libby, Montana, advising him that, if Mr. Sheridan failed to pay his assessments, she wished to be notified so that she might pay for the benefit of her daughter; that in response the clerk wrote Mrs. Hewitt that Mr. Sheridan's assessments were then paid in advance, that when further assessments became due he would notify her, and that he regretted to learn of the insanity of Mr. Sheridan; that the clerk afterwards failed to notify Mrs. Hewitt of assessment No. 1, for January, 1902; that Sheridan was suspended for its nonpayment; that by reason of the failure of the clerk to notify Mrs. Hewitt, such suspension was void; that no subsequent notice was given Mrs. Hewitt, and that the certificate therefore remained in full force at the date of Sheridan's death.

The defendant claims that due notice of assessment No. 1, for January, 1902, was given to the assured by the clerk of the head camp, in the manner provided by the contract; that he failed to pay the same and became *ipso facto* suspended on February 2, 1902; that he was never reinstated; that no notice was given the defendant of the insanity of the insured prior to his suspension; that insanity is no excuse for nonpayment of assessments; and that the alleged notice of insanity and the clerk's alleged promise to inform Mrs. Hewitt of nonpayment, conferred no rights upon the plaintiff, nor

did they impose any duty upon the defendant. Prior to the commencement of this action, the plaintiff tendered to the defendant all dues and assessments which had matured between January 1, 1902, and June 1, 1904, amounting to $27.30. This tender was refused, the defendant denying liability on the certificate. On trial the jury found a verdict in favor of the plaintiff for $1,972.70, and from the judgment entered thereon, this appeal has been taken.

The appellant, with other assignments of error, contends that the trial court erred (1) in denying its motion for a nonsuit, and (2) in denying its motion for a directed verdict. The pleadings and evidence show, that the appellant is a fraternal mutual benefit association, organized under the laws of Illinois, with its head camp at Rock Island, and with numerous local camps throughout Illinois and other states; that it is organized on the lodge plan, having a ritualistic form of work and also certain fraternal, social and indemnity features. Hiram D. Sheridan was a member of the local camp at Libby, Montana. By the terms of his certificate, the appellant agreed in case of his death to pay to the respondent as beneficiary the sum of $2,000, subject to certain conditions therein stated, one of which was that, if assessments against the assured should not be paid to the clerk of the local camp on or before the first of the month following the date of notice of the same, then the certificate should be null and void.

The by-laws provided, that every beneficial member who after notice should fail to pay any assessment on or before the first of the following month, or who should fail to pay dues in advance on or before the first day of April, July, October, or January, should *ipso facto* become suspended; that during such suspension his benefit certificate should be absolutely null and void; that a suspended member might be reinstated within sixty days upon payment of all arrearages, together with all fines, dues and assessments maturing subse-

quent to default, provided that he was then in good health and furnished the clerk of the local camp a written warranty to such effect signed by himself; that a beneficiary member in suspension for more than sixty days but less than six months, if in good health, might be reinstated upon furnishing a certificate of good health from the camp physician after medical examination duly approved by the head physician, and upon payment of all arrearages; that no officer of any local camp was authorized or permitted to waive any of the provisions of the laws of the society relating to the contract for the payment of benefits; that no officer of any local camp should have the right or power to waive any of the provisions of the by-laws of the society; that the clerk of the local camp was declared to be the agent of such camp and not the agent of the head camp; that no act or omission on his part should have the effect of creating a liability on the part of the society or of waiving any right or immunity belonging to it, and that he should not collect or receive assessments or dues from a beneficiary member who has been suspended, except upon reinstatement in the manner above mentioned. All by-laws of the society were, by the express terms of the certificate, made a part thereof.

No payment of any assessments or dues maturing after December 1, 1901, was made by Sheridan, or any other person, at any time prior to his death in June, 1904, nor were any tendered, except on the one occasion hereinafter mentioned. The respondent's witnesses testified that in December, 1901, Mrs. Hewitt wrote a letter to the clerk of the local camp advising him of the insanity of Sheridan, and requesting him to notify her so that she might pay the assessments in the event of the failure of Sheridan to do so; that the clerk, answering this letter, stated the assessments were then paid in advance, and that he would keep her notified; that by reason of the failure of the clerk to give her any further notice, she failed to pay the assessment levied in January,

1902, not knowing that it had been levied; that in February, 1902, the clerk by letter advised her of the suspension of Sheridan for nonpayment of the January assessment, and sent her a blank certificate of health to be signed by him as a condition precedent to his reinstatement; that in response to this letter, she, on March 8, 1902, wrote the clerk in part as follows:

"I have been away a little while and was not here when Lulu, my daughter, got your letter or would have seen to it at once as Sheridan was here then but he is not here now and the last time I saw him, about three weeks ago, he was well and walking down the street, but as he has left town I cannot get him to sign the paper but will inclose $3.60 to pay the dues to May 1st, and if it is not all right you can return the money order to me, . . . the reason I wish to keep up these dues is he is a very reckless man now in some ways and as I wrote you a year ago that I would keep up these dues if you would inform me when he failed to pay. . . . I hope you will look on my letter with some favor and make this all right, that is, if his insurance still runs to Lulu, his daughter."

The original of the last-mentioned letter was produced at the trial but none of the others mentioned by respondent's witnesses could be found. No further attempt at payment of either assessments or dues was made by the respondent or her mother, nor is it claimed that any further correspondence took place. The $3.60 remitted by Mrs. Hewitt was returned by the clerk, he .refusing to receive the same without the health certificate. The clerk denies receiving any letter from Mrs. Hewitt in December, 1901, and also denies that he wrote her the letter which she says she received from him during the same month, in which he promised to notify her of the assessments when levied. As the jury found a verdict in favor of the respondent, they necessarily believed the statements of her witnesses, and we must accept the same as true.

The contention of the respondent is, that the appellant had no right to suspend Sheridan for nonpayment of dues or

assessments, he being, to appellant's knowledge, insane and unfit for business; that appellant's agent, the clerk of the local camp, failed to notify the respondent of the levy of assessments as agreed, and that, by reason of such failure, the attempted suspension was void.  It is not disputed but that notice of the January, 1902, assessment was given to Sheridan by the head clerk, in the manner provided by the by-laws, and the appellant now insists that nonpayment after such notice *ipso facto* worked a forfeiture of the certificate, and that, even though the clerk of the local camp did agree to notify the respondent's mother of the assessments when levied, such agreement was not binding upon the appellant by reason of the restrictions upon his authority contained in its by-laws.

We think these contentions should be sustained upon the authority of *Modern Woodmen of America v. Tevis*, 54 C. C. A. 293, 117 Fed. 309, and cases therein cited.  In the *Tevis* case the United States circuit court of appeals construed and passed upon the legal effect of the identical by-laws now before us, and we fully indorse and adopt its reasoning as controlling in this case, this being the sole instance in which it is shown that the clerk in his course of dealing with members or beneficiaries violated any by-law of the society, and it not appearing that his action was the result of any customary course of procedure adopted by him towards members or beneficiaries.  A single act of transgression cannot arise to the dignity of a custom so as to be impliedly ratified by the appellant.  Had it been pleaded and shown that the clerk habitually violated appellant's by-laws in this or kindred matters, a different rule might possibly be applied in determining the relative rights of the parties; but that question is not now before us, as no showing of any such state of facts has been made.

The appellant further contends that the insanity of the assured is no excuse for nonpayment under the contract, and

in support of such contention cites, with others, the following
authorities, which we think are in point: *Pitts v. Hartford
Life & Annuity Co.*, 66 Conn. 376, 34 Atl. 95, 50 Am. St. 96;
*Wheeler v. Connecticut Mut. Life Ins. Co.*, 82 N. Y. 543, 37
Am. Rep. 594; *Carpenter v. Centennial Mut. Life Ass'n*, 68
Iowa 453, 27 N. W. 456, 56 Am. Rep. 855. In following
these cases, we are not unmindful of the case of *Buchannan
v. Supreme Conclave etc.*, 34 L. R. A. 436 (178 Pa. St. 465,
35 Atl. 873, 56 Am. St. 774), cited by respondent, and which
we regard as being against the weight of authority.

The respondent most vigorously contends that, as she was
misled by the act of the clerk of the local camp, the appellant
had no right to forfeit the certificate, and that it should be
estopped from pleading such forfeiture. Were we to con-
cede that the clerk had power to bind the appellant when he
agreed to notify respondent's mother of assessments as levied,
and should we also hold that the beneficiary was entitled to
notice of assessments by reason of the insanity of the insured,
of which appellant was advised, still we think no recovery
can be permitted herein, as the respondent and her mother,
who was acting in her behalf, must be held by their subse-
quent conduct, covering a period of more than two years,
to have acquiesced in such alleged irregular forfeiture of
the certificate. At all times after March 8, 1902, they failed
to make any further tender of dues or assessments, nor did
they take any steps to secure relief from such suspension and
forfeiture.

In *Lavin v. Grand Lodge*, 104 Mo. App. 1, 78 S. W. 325,
cited by respondent, it was contended that the wife of the
beneficiary had twice tendered payment of assessments which
were due, but that the clerk of the local lodge had declined to
accept the same for the reason that, as he alleged, the tender
was insufficient in amount. No further payments were made or
tendered during the life of the assured, who died some six
months later. On trial, judgment was entered in favor of the

beneficiary, which the appellate court reversed, ordering a new trial. Upon investigation we find that, on the second trial, the beneficiary again recovered judgment, and that the case again came to the court of appeals, being reported in 112 Mo. App., 1, 86 S. W. 600. On this last hearing, the appellate court enters into a very elaborate and able discussion of the rights and duties of an assured when a certificate issued by a fraternal society has been forfeited without just cause, and announces the doctrine that it is essential for the preservation of the rights of the beneficiary under the certificate that, notwithstanding such forfeiture, the assured or his representative should offer to fully perform the contract upon his part. The court, reviewing numerous authorities, points out a clear distinction between the principles applicable to old line life insurance companies which carry on business for profit, and those which are applicable to fraternal societies. Under appellant's by-laws and the terms of the certificate, Sheridan was required to pay quarterly dues in advance, without notice of the same. There is no showing that either he or any other person ever offered to make such payments within the two years and a half that the assured lived after January, 1902. Yet the respondent and her mother, who had the certificate in her possession, must have known that nonpayment of these dues would *ipso facto* forfeit the rights of the assured, without regard to the assessments. There is no showing that, after the tender, made in March, 1902, was returned by the clerk, the assured, the respondent, or her mother ever attempted to take any steps, either in the order or in any court of justice, to compel a reinstatement of the policy, or to have the alleged forfeiture declared to be void. The appellant contends that, under the by-laws of the society, the respondent should have appealed from the action of the clerk, and that having failed to do so, she is now estopped from claiming under the certificate. Respondent, however, calls attention to the fact that the by-laws by their express terms give

the right of appeal to members only. This is true. Yet were we to hold that the respondent, by reason of her father's insanity, was, prior to his death, entitled to any vested right in the certificate as against the appellant, she certainly should have taken some action to protect herself from the loss which would necessarily result from the forfeiture alleged to be void, and should have done so without unreasonable delay. Accepting her theory of this case, we are unable to escape the conclusion that a duty was imposed upon her to at least direct the attention of the local camp to the action of its clerk, so that it might be afforded an opportunity for correcting his mistake in refusing the tender, either by taking action itself, or by causing the head camp to act. If the respondent and her representatives could be permitted to remain quiet and allow the suspension of Sheridan and the forfeiture of the certificate to continue unquestioned for the period of more than two years, without even tendering any payment of dues which necessarily matured, and could then successfully prosecute this claim against appellant, there is no reason why they could not have continued such inactivity for a period of ten years, or even longer. Such a construction of the certificate would be absurd, to say nothing of its being unjust. We think the respondent acquiesced in the decision and action of the clerk, that she is now bound thereby, and is not entitled to recover.

The motion for a directed verdict in favor of the appellant should have been granted, and the trial court erred in denying the same. It is ordered that the judgment of the superior court be reversed, and that the cause be remanded with instructions to dismiss the action.

MOUNT, C. J., ROOT, FULLERTON, HADLEY, DUNBAR, and RUDKIN, JJ., concur.