[No. 24561.  Department One.  January 3, 1934.]

OSCAR F. REYNOLDS, *as Administrator, et al., Respondents*, v. THE TRAVELERS INSURANCE COMPANY, *Appellant.*[1]

[1]Reported in 28 P. (2d) 310.

*Preston, Thorgrimson & Turner,* for appellant.
*Lester E. Pope* and *E. C. Whitley,* for respondents.

Steinert, J.—This action was brought to recover the full amount of a life insurance policy made payable at the death of the insured named therein, and also to recover the aggregate amount of monthly income for permanent total disability of the insured during his lifetime. The action was tried before the court without a jury. The court made findings of fact and conclusions of law, and thereupon entered judgment for plaintiff. The defendant has appealed.

The facts are these: On February 5, 1925, appellant issued its policy on the life of Garrett E. Nearing in the sum of four thousand dollars, with Mary E. Nearing, his wife, named therein as beneficiary. Mr. Nearing and his family were, at that time, residents of Dallas, Texas. The insurance was made effective from February 2, 1925. In addition to the death benefit, the policy contained a provision for the payment to the insured of a monthly income of forty dollars during permanent total disability. Respecting this latter feature, the policy provided:

*"Upon due proof that since the payment of the initial premium upon this contract, before a default in the payment of any subsequent premium,* and before the anniversary of this contract nearest to the sixtieth anniversary of the date of birth, the Insured has become wholly disabled by bodily injuries or disease and will be continuously and wholly prevented thereby for life from engaging in any occupation or employment for wage or profit, the Company will waive the payment of any premiums which may fall due on this contract during such disability and will pay from the commencement of such disability and during its continuance the disability income stated on the first page of this con-

tract. The premiums so waived and the disability income so paid will not be deducted in any settlement hereunder." (Italics ours.)

The grammatical arrangement of the italicized portion of this provision has occasioned the dispute between the parties to this action.

The policy recited upon its face that it was issued in consideration of the signed application therefor by the insured, and of the payment of a premium of thirteen dollars on the second day of each month for twenty years, or until the death of the insured. As a special privilege, a grace of thirty-one days for the payment of premiums was allowed, during which time the contract was to remain in full force and effect.

It is conceded that the premium payments due February 2nd, March 2nd and April 2nd, 1925, respectively, were paid, but that no subsequent payments were ever made or tendered; it is also conceded that the policy lapsed on June 5, 1925, for nonpayment of premiums, unless such payments were waived, either by the fact of disability or by some act of the company. Beyond this point, the evidence is, or rather the conclusions to be drawn therefrom are, in dispute. There was evidence to support the following material facts found by the trial court:

Shortly after receiving the policy on or about February 5, 1925, the insured began to develop symptoms of insanity which were so progressive that, by the first of April, 1925, or in any event before the expiration of the grace period for the April premium, he had become totally and hopelessly incapacitated by reason of syphilitic paresis. Later in the same year, the insured was brought to Seattle by his wife, and there remained in her care continuously until August, 1927, when he was committed to the asylum for the insane at Steilacoom, Washington, where he died September 9, 1927.

In the spring of 1927, the wife for the first time learned of the existence of the policy. This information was communicated to her by certain agents of the company in Seattle, who came to the home of the Nearings to inquire why the premiums on the policy had not been kept up. Search was at once instituted by the wife, and the policy was found by her while the agents were still at the house. On being told that the insured had been insane for about two years, the agents suggested that proof of disability should be made. Subsequently, Mrs. Nearing visited the company's office in Seattle, where blanks for making proof were furnished to her.

Although the company's agents knew that the premiums on the policy had not been paid, and also knew that Mrs. Nearing was cognizant of that fact, they nevertheless raised no question at the time as to the failure or timeliness of proof of disability. Within a short time thereafter, formal proofs were actually supplied by Mrs. Nearing. It will be kept in mind that all the transactions subsequent to the discovery of the policy occurred in 1927, nearly two years after the policy would ordinarily have lapsed for non-payment of premiums. Upon receipt of the formal proofs at its home office, the appellant made an independent investigation of the matter, and as a result thereof disallowed the claim, on the ground that the insured could not be considered as having become totally disabled prior to the lapsing of the policy. The letter from the company disallowing the claim reads as follows:

"Mr. Garrett R. Nearing  Seattle, Wash.
"6040 7th Avenue N. E.  August 17, 1927.
"Seattle, Washington.
  "re: *Life Policy 18-NW-2777—P. T. D. Claim.*
"Dear Sir:
  "We have just received a letter from the Home Office stating that after a careful investigation of this

case at Dallas, Texas, they did not feel that you could be considered totally disabled prior to the lapsing of your policy on April 2nd, 1925.

"It is, therefore, necessary that your claim be disallowed inasmuch as it is not in order for payment.

"Very truly yours,
"Claim Division,
"By D. T. Shinn."

Within less than a month after the date of this letter, the insured died.

As the title of this action indicates, Mrs. Nearing, the beneficiary named in the policy, is now dead, and the action is at present being waged by the respondent in his representative capacity of administrator of the two estates.

In addition to the foregoing facts, which we think are supported by the evidence, the trial court found that the policy of insurance matured on or about April 1, 1925, by reason of the permanent total disability of the insured, and was in full force and effect at all times up to and including the date of Mr. Nearing's death. The trial court further found that due and ample proof of such disability occurring prior to default in the payment of premiums had been furnished. These latter findings, so termed, were, in reality, conclusions, and furnish the basis of the dispute between the parties herein.

There are three questions in the case. The first question is whether the contract of insurance required under the law of this state that proof of permanent total disability be submitted *prior* to the lapsing of the policy for non-payment of premiums, or merely required that the proof submitted show that the *disability occurred while the policy was still in force*. Under the first alternative, the proof should have been made not later than the date of the expiration of the grace period allowed for the payment of premiums. Under

the latter alternative, proof of permanent total disability, although occurring many years before, could be supplied at the time of death of the insured. Under the latter alternative, also, such permanent total disability would of itself have the effect of keeping the policy alive for years, without notice to the company, and without payment of further premiums.

The decisions, generally, upon this question are in conflict. We need not resolve their comparative weight, because the question has been definitely settled in this state. In *Wick v. Western Union Life Ins. Co.,* 104 Wash. 129, 175 Pac. 953, the total disability clause was practically the same as that here involved. So far as is material here, that clause reads as follows:

"Total Disability. If the insured, before attaining the age of sixty years, shall furnish due proof that he has, before default in the payment of any premium, become wholly disabled by bodily injury or disease and will be permanently, continuously and wholly prevented thereby from pursuing any and all gainful occupations, the company will pay for said insured all premiums which shall become due and payable during the continuance of such disability."

It will be observed that the grammatical arrangement and punctuation of the language dealing with the time for furnishing proof were, in effect, the same in that case as those employed in the case at bar. The same contention was made there as is made here. The court held that, under the terms of the disability clause just quoted, proof was required to be furnished "before default in any premium." In reasoning to its conclusion, the court pointed out that the word "has," in the clause then under consideration, was significant in that it had reference to an event as of the present time, rather than as of the past. The same reasoning is, of course, applicable to the present situation. The court then noticed other provisions in the policy, ex-

pressive of the intent to place a limitation as to time upon the vitality of the contract.

Similar provisions, though not identical in·form or extent, are contained in the policy before us. For instance, on the first page of the contract, there is, in addition to the consideration clause above referred to, a prominent statement to the effect that the monthly payments would not be required during permanent total disability "after receipt by the company of due proof thereof." The contract also contains a "reinstatement" privilege provision which required written application by the insured, with satisfactory evidence of insurability and the payment of all intervening premiums.

There is also a provision to the effect that, if the premiums were not paid when due, the insurance should continue as "term insurance" during the term, including the period of grace. Further, there was a condition expressed in the policy that, if premiums were not paid on or before the date when due, the liability of the company should only be as thereinbefore provided. The back of the policy, which, when folded in its customary form, became the sectional front, contains an admonitory paragraph, readily discernible at a casual glance, to the effect that, in the event of either death or permanent total disability, notice should be given to the company at once. We call attention to these various provisions and statements merely for the purpose of showing the similarity between the policy in the *Wick* case and that in the present case.

The *Wick* case, an *En Banc* decision, was decided in 1918. It has never been overruled or modified. Since its rendition, many policies have been written in reliance upon the construction therein adopted by the court. That decision is, therefore, authoritative and controlling here. We therefore hold that the terms

of the policy required that proof of permanent total disability be supplied prior to the lapsing of the policy for non-payment of premiums.

■ The second question is whether the insanity of the insured excused the lack of timeliness in the submission of proof of permanent total disability. ·While there was a serious question, under the evidence, whether the insanity of the insured had progressed to such a point, on April 1, 1925, or within the grace period, as to render the insured permanently and totally disabled, that was a question of fact to be determined by the trial court. Since there was material evidence to support the court's findings in that respect, we must accept the fact as so found.

■ The general rule is firmly established that insanity or incapacitating sickness of the insured, because of which he fails to pay, when due, a premium or assessment on an insurance policy, will not excuse such failure so as to prevent a forfeiture, termination or suspension of the rights of the insured, in a case where the policy provides for such forfeiture in the event of non-payment of premium. *Sheridan v. Modern Woodmen,* 44 Wash. 230, 87 Pac. 127, 120 Am. St. 987, 7 L. R. A. (N. S.) 973; *New York Life Ins. Co. v. Alexander,* 122 Miss. 813, 85 So. 93, 15 A. L. R. 314; *Smith v. Missouri State Life Ins. Co.,* 134 Kan. 426, 7 P. (2d) 65; *Hipp v. Fidelity Mutual Life Ins. Co.,* 128 Ga. 491, 57 S. E. 892, 12 L. R. A. (N. S.) 319; *Franklin Life Ins. Co. v. Fisher,* 164 Okla. 134, 23 P. (2d) 151; *Klein v. New York Life Ins. Co.,* 104 U. S. 88, 26 L. Ed. 662; *Thompson v. Knickerbocker Life Ins. Co.,* 104 U. S. 252, 26 L. Ed. 765; 3 Couch Cyc. of Insurance Law, p. 2232; 4 Cooley's Briefs on Insurance (2d. Ed.) p. 3671; 14 R. C. L. pp. 987, 996.

While, upon first thought, this rule may be con-

sidered harsh, it has very substantial reason to support it. Prompt payment of premiums is of the very essence and substance of the contract, against which the courts may not grant relief. While sickness or insanity of the insured may render it impossible for *him* to pay the premium, it does not render payment wholly impossible, because it may be paid by others for him. Sickness or insanity of the insured is not considered to be such an act of God as will excuse failure to make prompt payment of premiums.

Now, if insanity does not excuse the failure to pay premiums, then there can be no good reason why it should excuse the failure to furnish proof of disability. It is the proof of disability that excuses the failure to pay the premiums. The very purpose of disability insurance is to provide an income during such disability, not to accumulate a fund for the benefit of a third party beneficiary. Such disability includes insanity and other forms of mental incompetency. Hence, when the insured takes out such insurance, he is called upon to make provision, as he easily may and usually does, for a contingency that may render him unable, personally, to make proof.

There are very potent reasons why this should be the rule. If the time for making proof be not confined to the period during which the policy is in force, then the beneficiary may wait until the insured has died and afterwards claim that the disability took place years before. The insurer would thus be put in a position where it would be almost impossible to make an investigation of the true facts of the situation. The practical effect would be that an insurance company would be compelled to carry every lapsed or forfeited policy as a contingent liability until after the death of the insured. All actuarial computations would thus be upset, and the amount of proper reserves could never

be determined. We, therefore, must hold that the incapacity of the insured furnished no excuse for the failure to make due proof during the time that the policy was kept in force by the payment of premiums.

The third question is whether the appellant expressly or impliedly waived the untimeliness of the proof, or is now estopped from setting up such defense. The law of insurance generally presents much conflict of judicial opinion, and in no phase of it is the conflict more marked than on the subjects of waiver and estoppel. As stated in *Bankers Trust Co. v. American Surety Co.*, 112 Wash. 172, 191 Pac. 845:

"A great deal of confusion arises in cases of this kind from the interchangeable use of the terms waiver and estoppel as though they were synonymous."

A waiver is the voluntary relinquishment of a known right, and may be either express or implied. An express waiver is governed by its own terms, and hence is not often the subject of much dispute. An implied waiver may arise where one party has pursued such a course of conduct as to evidence an intention to waive a right, or where his conduct is inconsistent with any other intention than to waive it. An estoppel is a preclusion by act or conduct from asserting a right which might otherwise have existed, to the detriment and prejudice of another who, in reliance on such act or conduct, has acted upon it. A waiver is unilateral and arises by the intentional relinquishment of a right, or by a neglect to insist upon it, while an estoppel presupposes some conduct or dealing with another by which the other is induced to act, or to forbear to act. 5 Cooley's Briefs on Insurance (2d Ed.), pp. 3939 to 3945.

In this case, there is no evidence of any express waiver, although respondent contends to the contrary. This leaves the question, then, whether there was an

implied waiver or else an estoppel. Just where the application of the doctrine of implied waiver ends and where that of estoppel begins, is often a very difficult question, and the authorities indicate much confusion upon the subject. It is not necessary to attempt to draw the distinction here, because we are satisfied that, under the facts as shown by the evidence, there were both an implied waiver and an estoppel.

The rule upon the subject is that, if an insurance company, having knowledge of such facts as vitiate the policy, nevertheless enters into negotiations or transactions by which it recognizes or treats the policy as still in force, or by its acts, declarations and dealings leads the insured to regard himself as being protected by the policy, or induces him to incur trouble or expense, such acts, transactions or declarations will operate as a waiver of the forfeiture and estop the insurer from relying thereon as a defense to an action on the policy. 5 Cooley's Briefs on Insurance, p. 4272; 7 Couch Cyc. of Insurance Law, § 1595, p. 5595 *et seq.*

A provision for forfeiture is inserted in an insurance policy for the benefit of the insurer, and, like all such provisions, may be waived by the company. Such a provision is binding to the extent that the insured can not ignore it, nor can the courts grant relief against it, but the insurer may waive it, or, by its conduct, lose its right to enforce it. *Thompson v. Knickerbocker Life Ins. Co.,* 104 U. S. 252, 26 L. Ed. 765.

In *Moore v. National Accident Society,* 38 Wash. 31, 80 Pac. 171, the plaintiff purchased an accident insurance policy from the defendant. Among the conditions of the policy was one to the effect that the failure of the insured or his beneficiaries to give the insurer notice of an injury for a period of ten days after the injury occurred should invalidate the policy. The

plaintiff was injured and became totally disabled while the policy was in force, and, when he demanded payment for his loss, was met with a refusal on the ground that he had not given notice within the ten days provided in the policy. In the subsequent action brought by the plaintiff, defendant moved to dismiss the complaint on the ground that plaintiff had not furnished *proof of his injury* within the time limited, after giving *notice* to the company that he had been injured. The court held that the defendant was estopped from urging that defense; that, having denied liability on one ground, its action amounted to a waiver of any other objection, and that therefore it could not vary its ground and insist that plaintiff could not recover because he had failed to comply with some other condition in the policy.

In *Hatcher v. Sovereign Fire Assurance Co.,* 71 Wash. 79, 127 Pac. 588, the policy provided that proofs of loss should be furnished within sixty days after the loss occurred. The formal proofs were not supplied within the time provided. The plaintiff contended that the requirement had been waived *after* the expiration of the sixty days. The court said:

"It must be admitted that there is some conflict of opinion upon this question. While it is uniformly held that this requirement is a valid one, and can only be defeated by a waiver, the conflict arises as to when this waiver may be made in order to bind the insurer. It will not be necessary to discuss these conflicting authorities, since the only thing of value in this opinion is to indicate which doctrine this court will follow. After due consideration, we have decided to unite with those courts which hold that the waiver will be effectual although the act or conduct of the insurer relied upon to constitute such waiver is subsequent to the time fixed by the policy within which proofs of loss must be furnished. We cannot understand why, when the insurer, with full knowledge of the terms of its

policy, knowing that, under a strict construction of its terms, the insured by his failure to comply with those terms has breached the condition of his recovery, it may not waive such breach; and when it so acts as to lead the insured to believe that he has not lost his rights under the policy, but that it is still in full force and binding upon the insurer, may not be held to as strict accountability as when the waiver takes place before the time fixed in the policy in which to furnish proofs of loss expires. Such a requirement as to time is nothing more than a condition involving forfeiture of a substantial right, and the application of the doctrine of waiver should be as effectual after the time as before. Since the only question is whether the strict observance of a contractual right will be insisted on, we can see no reason why such a strict observance may not be waived in this case as in many others that might be cited, irrespective of the time of such waiver.''

This case was cited with approval in *Bowden v. General Insurance Co.*, 152 Wash. 199, 277 Pac. 443.

While the foregoing cases from this state arose out of accident or fire insurance policies, the principle involved is just as applicable to life insurance policies containing provisions for income during permanent total disability.

Every act of the appellant and its agents, in this case, from the beginning to the time that the present action was commenced, is consistent only with the theory that the question of timeliness of proof had been waived by the appellant. Knowing that the premiums had not been kept up, certain of the company's agents came to the insured, without invitation, and suggested that the insured had a ''pretty good claim'' and that he should take it up with the company. Pursuant to that suggestion, the wife of the insured did take the matter up with the company's local office at Seattle. She was told to file a claim, in the face of the fact that she then stated that the premiums had not

been paid. Forms of proof were supplied, which, at the expenditure of time and trouble and possibly some money, were completed and submitted. While we do not consider these preliminaries of controlling importance or effect, they are at least consistent with what followed.

The company, on receipt of the proofs at its home office, and with their records before them showing that the policy had lapsed, entered upon an independent investigation during which it corresponded with a physician of the insured and requested information regarding Mr. Nearing's physical and mental condition, suggesting that "such information will greatly assist Mrs. Nearing." How could it have assisted her if the company intended to assert that the policy had lapsed? Then, after completing its investigation, the company rejected the claim on the sole ground that the insured could not be considered as totally disabled prior to the lapsing of the policy "on April 2, 1925." Not a word was said about the untimeliness of proof. Had the company intended to resist the claim on that ground, it would have been an easy and simple thing to have said so, and at once ended the matter. Under its present contention, all that it then did was a vain and useless thing, even from its own standpoint. It is not to be assumed that the appellant would go to all that trouble for nothing, nor that it would unnecessarily permit the insured or his wife to indulge a false hope for a brief period. Rather is it to be assumed that the appellant was acting in utter good faith, and that it intended to waive the provision for forfeiture and treat the matter as though the only question was whether the permanent total disability of the insured had occurred while the policy was still in force.

But the situation assumes even larger proportions than as already suggested. An issue of fact with ref-

erence to the disability had arisen between the parties. The insured, or his wife, was insisting that the disability had occurred *before* the policy had lapsed; the appellant was insisting that it had not. Disability was therefore the primary fact on which recognition of the claim depended. The only way that the insured could resolve that fact in his favor was by court action. This, of course, the appellant well knew.

Convinced of the soundness and rightness of her position in this respect, the wife did the natural thing on behalf of the insured. She began a suit. Had she been then advised that the company was relying, or would rely, on the fact that the policy had lapsed, she would probably have never begun the action. Such contention at least would have injected an element that would have been difficult, and, under our holdings, well-nigh impossible, for the claimant to overcome. But instead of raising the insuperable barrier, appellant permitted the claimant to proceed upon the theory that that barrier had been removed. The commencement and maintenance of an action necessitated the expenditure of further time, trouble and money on the part of the representatives of the insured.

The appellant having followed a course of conduct wholly inconsistent with any intention to declare that the policy had lapsed at the time that the proofs were furnished, and having permitted the respondent and those preceding him to incur the expense of a lawsuit under the belief that the appellant had no such intention, it is now estopped to assert a defense based on a contrary intention.

With that feature of the case eliminated, there remains only the question of fact as to whether or not the insured had become permanently and totally disabled while the policy was still in force. While that issue was in serious dispute, the court found in favor

of the respondent upon evidence which we believe warranted its conclusion.

The judgment is therefore affirmed.

BEALS, C. J., MAIN, MITCHELL, and MILLARD, JJ., concur.

