HINKLEY et al. v. PENN MUT. LIFE INS. CO. OF PHILADELPHIA.

No. 21.

District Court, E. D. Washington, N. D.

Feb. 17, 1941.

Thomas A. E. Lally, of Spokane, Wash., for plaintiffs.

Graves, Kizer & Graves, of Spokane, Wash., for defendant.

SCHWELLENBACH, District Judge.

On June 30, 1930, defendant entered into an insurance contract with Jack T. French of Los Angeles, California. In it defendant insured the life of French in the amount of ten thousand dollars ($10,000). It provided for the payment of premiums quarterly on the twenty-fifth day of September, December, March and June of each year. Attached to and made a part of the contract was a supplemental agreement providing for total and permanent disability benefits and double indemnity benefit. (Since double indemnity is not involved here, no further reference to that provision will be made.) The pertinent part of the supplemental agreement follows:

"Total and Permanent Disability Benefits;
Monthly Income Payment and
Waiver of Premium.

" 'Total and Permanent Disability' Defined. Disability is total when the insured is prevented by bodily injury or disease from performing any work or from engaging in any occupation whatever for remuneration or profit.

"Total disability shall be deemed to be permanent if it has been continuous for not less than three consecutive months immediately preceding the receipt of due proof.

"Monthly Income. The Company will pay to the insured or, if the insured be insane, then to his or her legal guardian or committee if any such has been appointed, or in the absence of any such appointment

then to the wife of the insured if a beneficiary of record under this Policy, a monthly income of One hundred & 00/100 Dollars for each completed month of insured's total and permanent disability as herein defined; such income to continue only during the period of such disability. Interest on any indebtedness under this Policy may be deducted from the monthly income payments hereunder.

"Continued Monthly Income after Maturity. If proof of total and permanent disability has been accepted by the Company and disability income payments are being made, the maturing of this Policy as an Endowment shall not terminate the payment of disability income, but such payments will be continued after such maturity during the period of total disability of the insured.

"Waiver of Premium. The Company will waive the payment of premiums falling due under this Policy during the insured's total and permanent disability, as herein defined. The premiums waived shall be the annual, semi-annual or quarterly premiums, according to the method of premium payment in effect when disability occurred.

"When Benefits Become Effective. Disability Benefits shall become effective as of the date of commencement of total and permanent disability of the insured, as herein defined, if due proof of such disability is received by the Company at its Home Office within six months from said date of commencement, otherwise Disability Benefits shall become effective as of a date six months prior to the receipt of such proof; provided in either event that on such effective date the first premium on this Policy had been paid and no subsequent premium was then in default, and further provided such proof is received by the Company during the continuance of said disability.

"No Disability Benefits will be granted unless total and permanent disability, as herein defined, shall commence before the Policy anniversary on which the age of the insured at nearest birthday is sixty years and unless due proof of such disability during its continuance is received by the Company at its Home Office prior to such anniversary or within six months thereafter.

"No Deduction for Benefits Granted. In any settlement under this Policy the Company shall pay such sums as may be due

thereunder without deduction of monthly income payments previously made, or of the amount of premiums waived.

"Participation. This Policy shall continue to participate in surplus during the period of said total and permanent disability prior to the maturity of this Policy.

"Increasing Values. Policy values shall increase from year to year in the same manner as though any premiums waived hereunder had been duly paid in cash.

"Recognized Disabilities. Without prejudice to any other cause of disability, the Company will recognize the entire and irrecoverable loss of the sight of both eyes, or the severance of both hands at or above the wrists, or of both feet at or above the ankles, or of one entire hand and one entire foot, as total and permanent disability.

"Recovery from Disability. The Company may at any time require of the insured due proof of the continuance of such total and permanent disability. Upon failure to furnish such proof or if it appear at any time that the insured has engaged or has become able to engage in any work or in any occupation whatever for remuneration or profit, all Disability Benefits under this Policy, except in the case of recognized disabilities hereinbefore mentioned, shall thereupon cease and all premiums thereafter falling due must be paid as provided in this Policy. If after recovery from disability, due proof be furnished that the insured has again become totally and permanently disabled, as herein defined, Disability Benefits will again become effective as if no previous disability had occurred.

"Termination. The provisions for Monthly Income Payment and Waiver of Premium for Total and Permanent Disability shall automatically terminate:

"(1) Upon default in the payment of any premium;

"(2) If this Policy be surrendered for its cash value, or if any paid-up insurance or extended insurance provided for in Section 3 of this Policy become effective;

"(3) Upon the Policy anniversary on which the age of the insured at nearest birthday is sixty years, or upon prior termination of this Policy by maturity or otherwise;

"(4) If the insured is a woman, upon her marriage;

"(5) If the insured engage in Military or Naval service in time of war;

"(6) If the disability of the insured be voluntarily self-inflicted.

"Upon termination under (4), (5) or (6) above, the liability of the Company shall be limited to the amount of the current unearned premium for such benefits, which shall be returned by the Company upon notice."

When the contract was entered into French was employed as vice-president of the Richfield Oil Company. A year or so later French discontinued with that Company and became associated with the Bernstein Advertising Agency at Los Angeles. All premiums on the policy except those due on March 25 and June 25, 1937, were paid. The last two premiums were not paid.

On July 23, 1936, French's wife's mother died in Spokane and French and his wife came here. While on the plane French became violently ill and on arrival here sought medical services of Dr. Paul S Hageman. Hageman hospitalized him from July 22 to July 27, 1936. He found a serious liver condition. Hageman testified that from the condition which he found and the complaints of the patient that it was his opinion that French had been totally and permanently disabled since January 1, 1936. However, French was required to return to California and Dr. Hageman did not see him after July 31, 1936.

However, a month later French went to San Francisco where he was treated by Dr. Thomas F. Mullen who operated on him September 5, 1936, and kept him at the hospital in San Francisco for four weeks from that date. He also described a serious liver and gall bladder condition and testified that in his opinion French had been totally and permanently disabled since January 1, 1936, and that the nature and extent of his illness was such that it was his opinion that French continued to be totally and permanently disabled until his death on July 23, 1937. However, French left San Francisco for Los Angeles at the end of his fourth week of hospitalization and Dr. Mullen did not see him again.

In February, 1937, French's wife died in Los Angeles and he was visited by the plaintiff who was French's wife's brother. The plaintiff testified that at that time French was in extremely bad physical condition having internal hemorrhages and plaintiff testified that he was unable to

work during the remainder of his life. Plaintiff, however, did testify that French was connected with the Bernstein Advertising Agency up to the date of his death.

On March 19, 1937, French went to the Los Angeles office of the defendant and borrowed $1,410.71, being the total loan or surrender value of the policy. French then came to Spokane and on March 31, 1937, went to the office of defendant and changed the beneficiary to the plaintiff. At that time plaintiff inquired of him as to whether the premiums had been paid and French told him that they had. However, for at least two years previous thereto a man by the name of McNeill, in Los Angeles, had been acting as a broker for French in his insurance matters and plaintiff wrote him requesting McNeill to check as to whether or not the premiums had been paid and directing him to pay them in the event they had not. Plaintiff testified that after French's death he called McNeill and McNeill told him that he had simply forgotten to pay the premium.

French made Spokane his headquarters during the remainder of his life. He made frequent trips to the Coast and at least one up into British Columbia. Sometimes while here he would stay with the plaintiff and sometimes would stay at a down town hotel. On July 23, 1937, he committed suicide in Spokane.

Shortly thereafter plaintiff went to the defendant's Spokane office and received from that office the proper blanks for the making of proof of death. However, before he had completed the filling out of the proof and claim defendant denied liability on the ground of the non-payment of the March 25 premium.

Thereupon this action was started for the face of the policy less the amount of the loan. To that extent plaintiff sues as beneficiary under the policy. He has also combined with the suit, as administrator of the French estate, a demand for the payment of one hundred dollars ($100) a month, being the monthly income provision under the supplemental agreement, and for a return of the premiums paid after January 1, 1936. In its answer, defendant properly pleads its defense of the lapse of the policy due to the non-payment of the March twenty-fifth premium.

■ The evidence as to the disability is, to say the least, sketchy. While each of the doctors gave the opinion as to the totality and permanency of his disability, the fact is that neither one of them saw him during the first seven months for which disability is claimed nor during the last nine months of the same period. However, there is sufficient evidence to justify the finding and I will make it that French was totally and permanently disabled from February, 1937, until the date of his death. This puts in issue the right of the plaintiff to recover for the face of the policy less the loan and the right to recover approximately five hundred dollars ($500) of monthly income.

The language of the supplemental agreement clearly placed upon the insured the duty during the continuance of his disability of presenting proof of such total and permanent disability to the Company before he would become entitled to either the monthly income payment or the waiver of premium.

■ I am in full sympathy with the decisions of the Courts that place upon the insurers the responsibility of having the provisions of their contracts strictly construed in favor of the insured. There are three reasons behind the philosophy of such decisions:

a. Uniformly, the drafting of the contract is performed exclusively by the insurer.

b. Many insurance contracts contain tricky, conflicting and ambiguous provisions which are not readily understood by the insured.

c. Many insurance contracts contain important provisions printed in such small type as to overlook the observation of the ordinary insured.

This contract is not subject to either of the two latter criticisms. The supplemental agreement is printed in large type, its language is plain and understandable, no one need employ a lawyer to know what it means, the heading "When Benefits Become Effective" is in particularly large type. No one could read that paragraph without fully understanding that the monthly income payment and the waiver of premium benefit did not become due or effective unless and until the Company, at its home office, received due proof of the total and permanent disability of the insured. What the plaintiff in this case is asking the Court to do is to re-write the terms of a plain, simple contract so as to overcome the unfortunate fact that the insured neglected to pay his premium.

There is no claim here that either the plaintiff or the insured was deceived. When on March 31, 1937, the plaintiff asked the insured as to whether or not he had paid the insurance premium, French answered that he had. He did not answer that it was no longer necessary for him to pay premiums because he was permanently and totally disabled. Can anyone doubt that a man of Mr. French's business experience would have given that answer to the plaintiff if he was relying upon that contention? When the plaintiff called McNeill, the insurance broker, and inquired as to whether or not he had paid the premium, McNeill's answer was that he had forgotten it. Can anyone doubt that any experienced insurance broker selected by the insured to handle his insurance affairs would have given the plaintiff this answer if he thought French was entitled to the total and permanent disability benefits?

1. Plaintiff's first legal contention is that despite the provisions of the policy, monthly income and waiver of premium benefits accrued automatically upon the happening of the disability. There is a line of cases which sustains this position. The leading case on which plaintiff relies is Minnesota Mutual Life Insurance Co. v. Marshall, 8 Cir., 29 F.2d 977. Following the rendering of the Marshall decision by the Circuit Court of Appeals of the Eighth Circuit, the rule there adopted was accepted in a number of jurisdictions all of which have been cited by plaintiff's counsel in his exhaustive brief. I do not propose to attempt to decide whether the Eighth Circuit later rejected the rule of the Marshall case or to attempt to reconcile the various decisions cited by respective counsel here. There are two reasons which impel me to accept the rule that the obligation to waive payment of premiums and to pay the monthly income was conditioned upon receipt by the Company, before default in the payment of any premium and during the continuance of the disability, of due proof of the insured's disability. The furnishing of such proof is a condition precedent which must be made by the insured before the disability benefits accrued:

a. I cannot accept the logic of the Court in the Marshall decision nor of the Courts that followed that decision. I agree with what was said by Mr. Chief Justice Hughes in Williams v. Union Central Life Insurance Co., 291 U.S. 170, 54 S.Ct. 348, 352, 78 L.Ed. 711, 92 A.L.R. 693, as follows: "It is * * * important, to the insured as well as the insurer, that the provisions of insurance policies which are clearly and definitely set forth in appropriate language, and upon which the calculations of the company are based, should be maintained unimpaired by loose and ill-considered interpretations."

b. The Appellate Courts of the States of Washington and California and the Circuit Court of Appeals of the Ninth Circuit have all decided this question in accordance with this ruling. Cochens v. Prudential Insurance Company of America, 4 Cal.App.2d 172, 40 P.2d 902; Morris v. New York Life Insurance Co., 6 Cal.App.2d 30, 43 P.2d 572; Wick v. Western Union Life Insurance Co., 104 Wash. 129, 175 P. 953; Jones v. New York Life Insurance Co., 158 Wash. 12, 290 P. 333; Reynolds v. Travelers' Insurance Co., 176 Wash. 36, 28 P.2d 310; Reingold v. New York Life Insurance Co., 9 Cir., 85 F.2d 776.

2. Plaintiff next contends that the theory of principal and subordinate clauses in the contract should be applied in this case. It is argued that because the paragraphs containing the description of the benefits precede the paragraph describing the conditions precedent to the accrual of the benefits that the latter paragraph should be disregarded. It seems to me apparent that defendant could not be expected to insert all of the provisions of the supplemental agreement in one sentence or one paragraph. Had it attempted so to do, it probably would have resulted in such ambiguity as to have made the understanding of the supplemental agreement impossible. There are cases, however, and plaintiff's counsel cites many of the best of them, where a distinction is made between principal and subordinate clauses or paragraphs in a contract. In those cases the courts do hold that they will, under certain circumstances, disregard the subordinate clause or paragraph and give weight only to the principal one. However, those cases uniformly are based upon the theory that the two clauses are in such vital disagreement that they cannot be reconciled and the court must make its choice as between them. In those instances they accept the principal clause and reject the subordinate one. Blackstone briefly stated the rule: "If there be two clauses so totally repugnant that they cannot stand together, the first must be received and the last rejected." Blackstone's Com-

mentaries, Vol. 2, p. 381. That situation does not exist in the supplemental agreement involved in this case.

3. Plaintiff contends that because defendant denied liability on the ground of the non-payment of the March twenty-fifth premium, it waived all right to any previous notices or proof of every nature. The reason behind the rule that the denial of liability by an insurance company constitutes a waiver of proof of loss or a waiver of other proofs than stated in the denial of liability is simple. It is that the law does not compel the doing of futile acts. For example, by its denial defendant here waived its right to compel the plaintiff to file the detailed proof of death for which the policy provides. Since they didn't intend to pay on the policy, the making out of the technical proof of death would have been a futile requirement. The reason behind the rule that the denial of liability on one ground waives other grounds of defense is equally simple. The insurance company has the opportunity for setting up any grounds it so desires for such denial of liability. An insured or the beneficiaries of an insured are entitled to know upon what ground the insurance company is depending. Consequently, many courts have limited insurance companies to the one defense set forth in their denial of liability. But neither of these two rules can assist the plaintiff here. In this case, defendant denied liability on the ground of the lapse of the policy due to the non-payment of the March twenty-fifth premium. The plaintiff's position is that it was unnecessary to pay the March twenty-fifth premium because of insured's total and permanent disability. Since it is the rule in this jurisdiction that the furnishing of proof is a condition precedent to the creation of a situation in which payment of premium became unnecessary, defendant's denial of liability goes right back through the transaction and in itself places upon the plaintiff the necessity of producing this proof.

4. The plaintiff's other contention is that because French died before six months after the due date of the March premium that the Company should have received proof of his disability even after his death. This argument is made despite the fact that the agreement provides that such proof must be received by the Company "during the continuance of said disability." Plaintiff contends that the disability continued after his death, that he wasn't able to work and that his condition was certainly permanent. It seems to me that the best answer to this argument is just to say that after July 23, he was not disabled but dead. I don't think anyone can misunderstand the difference between the two words. As the Supreme Court of Illinois said, (Ferguson v. Penn Mutual Life Insurance Co., 305 Ill.App. 537, 27 N.E.2d 548, 550): "Disability presupposes life. Death is the antithesis of life."

Furthermore, there is another very valid reason why an insurance company has a right to insist that the Court shall give effect to this provision of its policy. It is entitled to an examination of its insured. To be effective, such examination would have to be made while the insured was alive. It is true that in some instances post mortem examinations would reveal physical conditions existing prior to death. In many instances such conditions would not be revealed by post mortem examinations. The provision in the policy is clearly written. It is easily understandable. No one can criticize it as being unfair.

From the foregoing it must be concluded that the action of the plaintiff must be dismissed.