[Civ. No. 14206. Second Dist., Div. Three. June 9, 1944.]

BEULAH ANDERSON, as Executrix, etc., Appellant, v. NEW YORK LIFE INSURANCE COMPANY (a Corporation), Respondent.

Harry C. Cogen for Appellant.

Meserve, Mumper & Hughes for Respondent.

DESMOND, P. J.—This is an appeal from a judgment in favor of the defendant insurance company in a case tried before a jury. It is contended that the evidence submitted was insufficient to sustain the verdict and that error arose when the trial court gave to the jury an allegedly erroneous instruction on the subject of waiver by the insured.

Mrs. Beulah Anderson, as executrix of her husband's estate, brought suit to collect disability benefits provided for in five separate policies of insurance which her husband had secured from the defendant company. Before the case was submitted to the jury she voluntarily dismissed two causes of action involving two of the policies.

The disability provision upon which Mrs. Anderson sought to recover appeared as a special and additional feature in policies primarily of life insurance, and the three policies which the jury was called upon to consider were written in the respective amounts of $5,000, $25,000 and $20,000. They were all issued on February 6, 1928, and contained identical disability provisions, reading as follows:

"TOTAL AND PERMANENT DISABILITY

"Disability shall be considered total whenever the Insured is so disabled by bodily injury or disease that he is wholly prevented from performing any work, from following any occupation, or from engaging in any business for remuneration or profit, provided such disability occurred after the insurance under this policy took effect and before the anniversary of the policy on which the Insured's age at nearest birthday is sixty.

"Upon receipt at the Company's Home Office, before default in payment of premium, of due proof that the insured is totally disabled as above defined, and will be continuously so totally disabled for life, or if the proof submitted is not conclusive as to the permanency of such disability, but establishes that the Insured is, and for a period of not less than three consecutive months immediately preceding receipt of proof has been, totally disabled as above defined, the following benefits will be granted:

"(a) Waiver of Premium.—The Company will waive the payment of any premium falling due during the period of continuous total disability, the premium waived to be the annual, semi-annual or quarterly premium according to the mode of payment in effect when disability occurred.

"(b) Income Payments.—The Company will pay to the

Insured the monthly income stated on the first page hereof ($10 per $1,000 of the face of this policy) for each completed month from the commencement of and during the period of continuous total disability. If disability results from insanity, payment will be made to the beneficiary in lieu of the Insured.

"In event of default in payment of premium after the Insured has become totally disabled as above defined, the policy will be restored and the benefits shall be the same as if said default had not occurred, provided due proof that the Insured is and has been continuously from date of default so totally disabled and that such disability will continue for life or has continued for a period of not less than three consecutive months, is received by the Company not later than six months after said default.

"The total and irrecoverable loss of the sight of both eyes or the use of both hands or of both feet or of one hand and one foot shall constitute total disability for life.

"Before making any income payment or waiving any premium, the Company may demand due proof of the continuance of total disability, but such proof will not be required oftener than once a year after such disability has continued for two full years. Upon failure to furnish such proof, or if the Insured performs any work, or follows any occupation, or engages in any business for remuneration or profit, no further income payments shall be made nor premiums waived."

The $5,000 life insurance policy provided for waiver of premiums during disability and payments of $50 per month as disability benefit; the $25,000 policy provided for waiver of premiums and $250 per month; and the $20,000 policy provided merely for waiver of premiums. A certain stated amount of the annual premium upon each policy was applicable, by its terms, to the total and permanent disability benefits in each case.

In the appellant's opening brief, the statement is made that "the policies were in good standing up to the time of Mr. Anderson's decease and he paid all premiums falling due on each of said policies." It may be assumed, therefore, that Mrs. Anderson, who had become the beneficiary under each policy, received the full amount of the face value of each upon proof of her husband's death.

Mr. Anderson died April 9, 1941, without having made any claim for disability benefits, or notified the defendant

company that he was disabled in any way, but on June 9, 1941, his wife, as executrix of his estate, made demand upon the company for payment and, failing to receive such payment, on December 6, 1941, filed this action consisting of five causes, each relating to a separate policy. She alleged "That on or about September 7th, 1938, said insured became wholly and permanently disabled and said disability was and remained continuous and permanent from the 7th day of September, 1938 to the 9th day of April, 1941, upon which latter date the said insured died at the age of forty-seven (47) years." The first and second causes of action were those as to which dismissals were filed. As to the other three policies, the sums claimed as due, because of disability during the period mentioned, approximately $2\frac{1}{2}$ years, amounted to $2,318.60 on the $5,000 policy, and $10,156.75 on the $25,000 policy. On the $20,000 policy, which provided for a waiver of premiums during the period of disability but not for any cash payment, the total amount claimed as due for premiums paid was $1,731. The defendant answered, denying the disability of the insured during the period mentioned, and setting up, as an affirmative defense, that no notice or proof of disability was given prior to Mr. Anderson's death and, further, that under the provisions of section 10401 of the California Insurance Code the insurance company was prohibited from making or permitting any discrimination between insureds of the same class.

It appeared from the evidence produced at the trial that in September of 1938, Mr. Anderson, the insured, became ill with a serious heart ailment and his physician recommended a complete and immediate vacation from the business in which he was engaged for many years and which appellant says "could well be denominated a 'one-man business,' " consisting, as it did, of establishing facilities for the housing and feeding of workmen employed on industrial projects where such facilities were not otherwise available. The insured failed to discontinue his activities, as recommended by his doctor, although he did, in the two or three years prior to his death, turn over to a Mr. Dunham some of his work. He died suddenly at the age of 47 years of coronary thrombosis. The defendant presented no witnesses, and at the conclusion of the case, and over the objections of the plaintiff, filed an amendment to its answer, setting up the affirmative defenses of waiver and estoppel.

In discussing the contention that the evidence was insufficient to sustain the verdict, the appellant says, "In order to establish a claim for disability benefits under the policies in question, we are compelled to meet three separate issues: 1. Was the insured totally disabled under the terms of said policy? II. How long did such disability exist? III. Did the insured's failure to claim disability benefits during his lifetime bar the Executrix of his estate from claiming such benefits?"

In our opinion, it is unnecessary to answer the first and second questions thus propounded for this reason: even if it be assumed that the insured was totally disabled under the terms of the policy within the period, September 7, 1938, to the date of death, still his failure to claim disability and offer proof thereof during his lifetime acted as a bar to such claim on the part of his executrix. As will be seen by reference to the disability provisions of the policy, the benefits will be granted "Upon receipt at the Company's Home Office, *before default in payment of premium,* of due proof that the insured is totally disabled as above defined, and will be continuously so totally disabled for life [etc.]." This language, by reason of the present and future tenses employed, certainly refers to a condition existing during the lifetime of the person insured, and the phrase which we have italicized, "before default in payment of premium," connotes a policy in force during the lifetime of the insured, for after the death of the insured no payment is due and therefore no default in payment of premium could arise. It may be noted, also, that the policy provides that even where a default occurs in the payment of premium after the insured has become disabled, "the policy will be restored and the benefits shall be the same as if said default had not occurred, provided due proof that the Insured *is* and has been continuously from date of default so totally disabled and that such disability *will continue for life* [etc.]." (Italics added.) This provision and the language used indicate that the policies in question contemplated the payment of benefits during the lifetime of the deceased and only after due proof of disability was made to the company. In other words, in order to realize disability payments upon any of the policies, fulfillment of a condition precedent, namely, due proof in the lifetime of insured of the disability insured against, rested upon him as one of the contracting parties. The policy also provides that "before

making any income payment or waiving any premium, the Company may demand due proof of the continuance of total disability."

All these matters are discussed in *Kantor* v. *New York Life Ins. Co.* (1935), 219 Iowa 1005 [258 N.W. 759], where the court was considering a policy identical with those involved in the instant case, so far as disability provisions are concerned, and had this to say: (p. 760 [258 N.W.]) "It will be noted that the language of the policy above quoted provides that the appellee company is to pay the disability benefits upon receipt of due proof that the insured is totally disabled and will be continuously so disabled for life. It is further provided that, before making any payments, the company may demand proof of the continuance of total disability. It is obvious that proof furnished after the insured has died does not establish that the insured is permanently disabled and will be permanently disabled for the remainder of his life. Moreover, in such a situation, the insurer could not demand proof of the continuance of such disability. These provisions of the policy cannot be reconciled with the proposition that there is an obligation on the part of the insurer to pay disability benefits to the representatives of the estate of the insured after the death of the insured and upon proof furnished by the representatives of his estate that before his death the insured had been disabled, although no proof of such disability or even notice thereof was ever given to the insurer. The proof thus furnished by the representatives of the estate would show the death of the insured. The insurer's obligation on receipt of that character of proof was to pay the sum of $5,000 to the beneficiary. That payment it made. Its obligation to pay disability payments and waive premium depended upon receipt of proof that the insured was living, that he was in being, that 'he is permanently disabled,' and 'he will continue to be permanently disabled.' Such requirements of the contract are not met by proof that the insured is dead. . . . See *Yohalem* v. *Columbian Nat. Life Insurance Co.*, 136 Misc. 748, 240 N.Y.S. 666. . . ." In the latter case, the court said, page 667: "I am satisfied that both the definite language of the policy and the decisions in other jurisdictions do not sustain plaintiff's contention. The language of the insurance contract 'that *he is* and *will be*' permanently disabled has reference to a condition present during the lifetime of the insured. . . . It is fundamental in such

cases that the insurer, in order to protect itself from fraud, may provide for such notice as will enable it to investigate the claim of disability. Notice of disability and indorsement of the waiver of premiums were substantial provisions of the contract and became conditions precedent to recovery." See, also, *Hinkley* v. *Penn. Mut. Life Ins. Co.*, 37 F.Supp. 1018. Also, *Bergholm* v. *Peoria L. Ins. Co.* (1931), 284 U.S. 489 [52 S.Ct. 230, 76 L.Ed. 416], where the following appears: "Here the obligation of the company does not rest upon the existence of the disability; but it is the receipt by the company of *proof* of the disability which is definitely made a condition precedent to an assumption by it of payment of the premiums *becoming due after the receipt of such proof*. The provision to that effect is wholly free from the ambiguity which the court thought existed in the Marshall policy [referring to *Minnesota Mut. L. Ins. Co.* v. *Marshall* (C.C.A. 8th) 29 F.2d 977, in which it was held that disability alone established the obligation of the company to waive premiums under the policy there considered and that proof was not a condition precedent but could be furnished within a reasonable time after the occurrence of the disability]. . . . It is true that where the terms of a policy are of doubtful meaning, that construction most favorable to the insured will be adopted. [Cases.] This canon of construction is both reasonable and just, since the words of the policy are chosen by the insurance company; but it furnishes no warrant for avoiding hard consequences by importing into a contract an ambiguity which otherwise would not exist, or, under the guise of construction, by forcing from plain words unusual and unnatural meanings. Contracts of insurance, like other contracts, must be construed according to the terms which the parties have used, to be taken and understood, in the absence of ambiguity, in their plain, ordinary and popular sense." The court, in *Morris* v. *New York Life Ins. Co.* (1935), 6 Cal.App.2d 30 [43 P.2d 572], quotes this language, and in *Cochens* v. *Prudential Ins. Co. of America* (1935), 4 Cal.App.2d 172, 175 [40 P.2d 902], is found an additional quotation from the Bergholm case, as follows: "The pertinent provisions of the policy there [i. e. *Minnesota Mut. L. Ins. Co.* v. *Marshall*], however, differ from those found in the policy here under consideration." Our comment in the instant case is the same.

Appellant calls attention to the fact that the language

used in the disability provisions of the 1928 policies here involved differs, in some respects, from the language employed in the disability provisions of the two policies as to which a dismissal was entered in this trial and which were written in 1920. We have examined all the policies and are not persuaded that the difference in language means a difference in meaning. We are still convinced that the language employed in the 1928 policies imposed a condition precedent upon the insured to make proof of his disability during his lifetime.

Our conclusion that the jury in this case rendered the only verdict consonant with legal principles makes unnecessary consideration of the claim that the jury was erroneously instructed.

Judgment affirmed.

Shinn, J., and Wood (Parker), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 7, 1944. Carter, J., and Schauer, J., voted for a hearing. Shenk, J., and Edmonds, J., did not participate therein.